FILED
United States Court of Appeals
Tenth Circuit

January 17, 2020

Christopher M. Wolpert
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

ALONSO MARTINEZ-PEREZ,

     Petitioner,

v.

WILLIAM BARR, Attorney General of the
United States,

     Respondent.

No. 18-9573

_____

**Petition for Review of an Order of the
Board of Immigration Appeals**
_____

Mark R. Barr, Lichter Immigration, Denver, Colorado, appearing for Petitioner.

Lynda A. Do, Office of Immigration Litigation (Joseph H. Hunt, Assistant Attorney
General, Civil Division, and Stephen J. Flynn, Assistant Director, Office of Immigration
Litigation, with her on the brief), Department of Justice, Washington, District of
Columbia, appearing for Respondent.
_____

Before **BRISCOE**, **EBEL**, and **HARTZ**, Circuit Judges.
_____

**BRISCOE**, Circuit Judge.
_____

     Alonso Martinez-Perez (Petitioner) has filed a petition for review of a final

order of the Board of Immigration Appeals (BIA). The BIA dismissed Petitioner's

appeal, holding that neither the BIA nor the Immigration Court had jurisdiction to

grant Petitioner's application for cancellation of removal. Petitioner then filed the present petition for review. Exercising jurisdiction under 8 U.S.C. § 1252(a), we grant in part and deny in part the petition for review, vacate the order of the BIA dismissing Petitioner's appeal, and remand to the BIA for further proceedings consistent with this Opinion.

**I**

Petitioner is a native and citizen of Mexico. Certified Administrative Record (CAR) at 63. He entered the United States in 2001, without being inspected and admitted or paroled. *Id.* On April 9, 2009, the Department of Homeland Security (DHS) charged him as removable from the United States pursuant to the Immigration and Nationality Act (INA) as an alien present in the United States without being admitted or paroled. *Id.* Immigration officials served Petitioner with a notice to appear. *Id.* The notice to appear did not include a date and time for his hearing. *Id.* at 408. One week later, Petitioner received notice of the date and time of his hearing in a separate document. *Id.* at 407. On May 5, 2010, Petitioner, through counsel, admitted the allegations contained in the notice to appear and conceded the charge of removability.[1] *Id.* at 63. The Immigration Judge found Petitioner removable. *Id.*

On July 7, 2011, Petitioner filed his application for cancellation of removal. *Id.* The Attorney General may, in pertinent part, cancel removal when "removal would result in exceptional and extremely unusual hardship to the alien's . . . child,

---

[1] Petitioner's May 5, 2010 hearing was initially scheduled for August 19, 2009. CAR at 69. It was rescheduled after Petitioner requested a "brief continuance." *Id.*

2

who is a citizen of the United States." 8 U.S.C. § 1229b(b)(1)(D). "The term 'child' means an unmarried person under twenty-one years of age." *Id.* § 1101(b)(1). Petitioner's qualifying relative was his daughter, who was sixteen years old when Petitioner filed his application for cancellation of removal. CAR at 213.

The hearing on Petitioner's application was initially scheduled for July 22, 2011, but the Immigration Court subsequently rescheduled the hearing on its own motion five times. *Id.* at 64. The Immigration Court first rescheduled the matter to January 6, 2012; then to February 7, 2014; then to June 5, 2014; then to January 28, 2015; and, finally, to November 29, 2019. *Id.* These continuances spanning a period of over eight years posed a problem for Petitioner because his daughter "would age out of her status as a qualifying relative on October 7, 2015, when she would turn twenty-one and no longer be considered a 'child' under . . . the Act." *Id.* On May 7, 2015, Petitioner moved to reschedule his hearing for a date before his daughter's twenty-first birthday, but his motion was denied. *Id.* at 96–98. In denying Petitioner's motion, the Immigration Judge stated that there was "no earlier docket availability for non-priority cases." *Id.* at 96.

Petitioner's hearing was eventually rescheduled for April 5, 2017, almost six years after his application was filed. *Id.* at 64. At the hearing, Petitioner acknowledged that he was no longer eligible for cancellation of removal because he no longer had a qualifying relative—by that time, his daughter had aged out. *Id.* Petitioner moved for

3

administrative closure[2] on "fairness and due process" grounds because he "ha[d] been in removal proceedings for eight years and ha[d] been prepared to move forward with the individual hearing for . . . six years." *Id.* at 87. He requested voluntary departure in the alternative. *Id.* at 89. The Immigration Court denied Petitioner's motion for administrative closure because "there [wa]s no relief immediately available to him, either inside or outside of removal proceedings." *Id.* at 65. Petitioner's request for voluntary departure was granted. *Id.* at 66.

Petitioner sought review by the BIA. *Id.* at 48. Petitioner argued that: (1) based on the Supreme Court's reasoning in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), the Immigration Court lacked jurisdiction over his removal proceeding because he was never served with a valid notice to appear; and (2) his Fifth Amendment right to procedural due process was violated when his hearing on his application for cancellation of removal was repeatedly continued, depriving him of a qualifying relative. *Id.* at 23. The BIA dismissed Petitioner's appeal. *Id.* at 4. First, it held that the Immigration Court had jurisdiction over Petitioner's removal proceeding, notwithstanding *Pereira*. *Id.* at 3 (citing *Matter of Bermudez-Cota*, 27 I. & N. Dec. 441 (BIA 2018)). The BIA, however, did not address Petitioner's due process argument. Instead, it noted the age of Petitioner's daughter at the time of the hearing before the Immigration Court and concluded that "neither the B[IA] nor the Immigration Judge ha[d] jurisdiction to grant

---

[2] Administrative closure is a docket control mechanism previously used to "temporarily remove a case from an Immigration Judge's active calendar or from the B[IA]'s docket." *Matter of Avetisyan*, 25 I. & N. Dec. 688, 692 (BIA 2012).

[Petitioner's] application [for cancellation of removal] in the absence of . . . a qualifying relative at the time of the hearing." *Id.* at 4. Petitioner timely filed a petition for review.

## II

We have jurisdiction under 8 U.S.C. § 1252(a) because the BIA's order denying relief from removal is an appealable final order of removal. *Sosa-Valenzuela v. Holder*, 692 F.3d 1103, 1108 (10th Cir. 2012). Our review is limited to constitutional claims or questions of law because eligibility for relief from removal is ordinarily an unreviewable matter of discretion under 8 U.S.C. § 1252(a)(2)(C) & (D). *Id.* at 1108–09. We therefore review the BIA's legal determinations de novo, but we do not ordinarily review its exercise of discretion. *Id.* at 1109.

## III

Petitioner presents two arguments in his petition for review. First, Petitioner argues that the Immigration Court lacked jurisdiction over his removal proceedings because his notice to appear did not specify the date and time of his initial hearing. Pet. Opening Br. at 15. Second, Petitioner argues that "the B[IA] erred when it [found] . . . that it lacked 'jurisdiction' to consider him as having a qualifying relative for cancellation." *Id.* at 27.

## A

We first turn to Petitioner's argument that the Immigration Court lacked jurisdiction because Petitioner's notice to appear did not include the date and time of the initial hearing. Title 8 C.F.R. § 1003.14 states that the Immigration Court's "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a

5

charging document is filed with the Immigration Court." In turn, a "charging document" is defined as "the written instrument which initiates a proceeding" before the Immigration Court, including a notice to appear. 8 C.F.R. § 1003.13. The statute governing removal proceedings defines a notice to appear as "written notice" that specifies, among other things, "[t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i). The implementing regulations, however, state that a notice to appear need only contain the time and place of the removal proceedings "where practicable." 8 C.F.R. § 1003.18(b).

Relying on the Supreme Court's holding in *Pereira* that "[a] putative notice to appear that fails to designate the specific time or place . . . is not a 'notice to appear under section 1229(a),'" Petitioner argues that jurisdiction never vested with the Immigration Court in his proceeding. 138 S. Ct. at 2113–14. In response, Respondent relies on the BIA's post-*Pereira* decision in *Bermudez-Cota*, which held that "a notice to appear that does not specify the time and place of an alien's initial removal hearing vests an Immigration Judge with jurisdiction over the removal proceedings . . . so long as a notice of hearing specifying this information is later sent to the alien." 27 I. & N. Dec. at 447. Respondent also points us to rulings from other circuits which hold that *Pereira* does not extend beyond the narrow stop-time rule context at issue in *Pereira*.

This court has very recently rejected a similar *Pereira*-based argument that a notice to appear which fails to specify the time and place of an alien's initial removal hearing deprives the Immigration Court of jurisdiction. *See Lopez-Munoz v. Barr*,

6

941 F.3d 1013, 1017 (10th Cir. 2019).  We follow the lead of *Lopez-Munoz* and "join the overwhelming chorus of our sister circuits that have already rejected similar *Pereira*-based challenges."  *Pierre-Paul v. Barr*, 930 F.3d 684, 689 (5th Cir. 2019); *see Banegas Gomez v. Barr*, 922 F.3d 101, 110 (2d Cir. 2019); *Nkomo v. Att'y Gen.*, 930 F.3d 129, 133 (3d Cir. 2019); *United States v. Cortez*, 930 F.3d 350, 358 (4th Cir. 2019); *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 315–16 (6th Cir. 2018); *Ortiz-Santiago v. Barr*, 924 F.3d 956, 963 (7th Cir. 2019); *Ali v. Barr*, 924 F.3d 983, 986 (8th Cir. 2019); *Karingithi v. Whitaker*, 913 F.3d 1158, 1160 (9th Cir. 2019); *Perez-Sanchez v. United States Att'y Gen.*, 935 F.3d 1148, 1154 (11th Cir. 2019).  As an initial matter, *Pereira* is inapposite.  As noted in *Lopez-Munoz*, the Supreme Court in *Pereira* addressed only the "narrow question" of whether a notice to appear that omits the time or place of the initial hearing triggers the statutory stop-time rule for cancellation of removal.  941 F.3d at 1018.  The Supreme Court held that a notice to appear that omits the removal proceeding's time or place does not stop the alien's accrual of continuous presence in the United States for purposes of cancellation of removal.  *Pereira*, 138 S. Ct. at 2113–14.  Petitioner attempts to expand *Pereira*'s holding into a jurisdictional invalidation of any removal proceeding initiated by a notice to appear that lacks a time or place designation.

But "*Pereira* was not in any way concerned with the Immigration Court's jurisdiction."  *Karingithi*, 913 F.3d at 1159.  "As our sister circuits and the B[IA] have noted, it is telling that the Supreme Court made no mention of jurisdiction in *Pereira*."  *Ortiz-Santiago*, 924 F.3d at 963.  Furthermore, "had [the Court] found a

7

lack of jurisdiction [in *Pereira*], it would not have remanded for further proceedings." *Id.* at 964.

Moreover, we agree with the several circuits that have held that the requirements relating to notices to appear are non-jurisdictional, claim-processing rules. *See, e.g.*, *Cortez*, 930 F.3d at 359; *Pierre-Paul*, 930 F.3d at 691; *Ortiz-Santiago*, 924 F.3d at 963; *Perez-Sanchez*, 935 F.3d at 1157. To be sure, "Congress's language [in § 1229(a)(1) is] 'definitional,' and time-and-place information [is] 'unquestionably' part of a Notice's 'essential character.'" *Ortiz-Santiago*, 924 F.3d at 961 (quoting *Pereira*, 138 S. Ct. at 2116–17). While Petitioner's notice to appear was defective, that did not divest the Immigration Court of jurisdiction. *See id.* "A failure to comply with the statute dictating the content of a Notice to Appear is not one of those fundamental flaws that divests a tribunal of adjudicatory authority. Instead, just as with every other claim-processing rule, failure to comply with that rule may be grounds for dismissal of the case." *Id.* at 963.

A claim-processing rule is a rule that "seek[s] to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). A claim-processing rule is mandatory to the extent a court must enforce the rule if a party properly raises it. *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1849 (2019). But a party's failure to comply with a claim-processing rule even when "framed in mandatory terms" does not "deprive a court of authority to hear a case." *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1632 (2015).

8

Importantly, "Congress has not 'clearly state[d]' that the immigration court's jurisdiction depends on the content of notices to appear." *Pierre-Paul*, 930 F.3d at 692 (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006)). Congress has delineated the subject matter that falls within the purview of the Immigration Court by providing that "[a]n immigration judge shall . . . decid[e] the inadmissibility or deportability of an alien," but Congress has not made the Immigration Court's jurisdiction dependent upon the content of notices to appear. 8 U.S.C. § 1229a(a)(1). As noted in *Lopez-Munoz*, § 1229(a)(1)(G)(i) says nothing about the agency's jurisdiction; the statute merely sets out the information that must be included in the notice to appear. 941 F.3d at 1017; *see also Ortiz-Santiago*, 924 F.3d at 963. Congress's silence "heavily weighs against treating the requirements relating to notices to appear as jurisdictional." *Pierre-Paul*, 930 F.3d at 692 (citing *Arbaugh*, 546 U.S. at 516 ("[W]hen Congress does not rank a [requirement] as jurisdictional, courts should treat the restriction as nonjurisdictional in character.")).

Further, the fact that 8 C.F.R. § 1003.14(a) purports to describe when "jurisdiction" vests carries no weight. "While an agency may adopt rules and processes to maintain order, it cannot define the scope of its power to hear cases." *Ortiz-Santiago*, 924 F.3d at 963; *see Lopez-Munoz*, 941 F.3d at 1015 ("The Attorney General didn't—and couldn't—restrict immigration judges' jurisdiction."). Thus, we conclude that the requirements of a notice to appear are claim-processing rules. The Immigration Court therefore had authority to adjudicate issues pertaining to

9

Petitioner's removal even though Petitioner's notice to appear lacked time-and-date information.

**B**

We now turn to Petitioner's second argument: that "the B[IA] erred when it [found] . . . that it lacked 'jurisdiction' to consider [Petitioner] as having a qualifying relative for cancellation" and dismissed Petitioner's appeal. Pet. Opening Br. at 27. Petitioner contends that, contrary to its ruling, the BIA had jurisdiction and "retained the quasi-legislative power to interpret the ambiguous cancellation statute in a way that would have fixed the age of [Petitioner's] daughter as of the date he filed his cancellation application, in light of the 'undue or unfair delay' in the scheduling of his final hearing." *Id.* We agree with Petitioner and remand for further proceedings.

"In the judicial context . . . [w]hether the court decided *correctly* is a question that has different consequences from the question whether it had the power to decide *at all*." *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013). "That is not so for agencies charged with administering congressional statutes." *Id.* For agencies, "[b]oth their power to act and how they are to act is authoritatively prescribed by Congress." *Id.*

The Supreme Court has recognized that "ambiguities in statutes within an agency's jurisdiction to administer are *delegations of authority* to the agency to fill the statutory gap in reasonable fashion." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005) (emphasis added); *see Hernandez-Carrera v. Carlson*, 547 F.3d 1237, 1246 (10th Cir. 2008) ("When Congress leaves a gap within a statute administered by an agency, Congress impliedly entrusts the agency with authority

10

to explain and fill in the interstices."). "Filling these gaps . . . involves difficult policy choices that agencies are better equipped to make than courts." *Brand X*, 545 U.S. at 980. As a result, the BIA has the authority to interpret ambiguous statutory terms and give them "concrete meaning through a process of case-by-case adjudication." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 448 (1987).

The parties do not dispute that the statute at issue here, § 1229b(b)(1)(D), is ambiguous. *Compare* Pet. Opening Br. at 23–24 ("the issue is ambiguous, and the B[IA] has the delegated authority to choose from a range of reasonable policy options" because "[s]ection 1229b(b)(1)(D) does not clearly" identify when the alien's removal must result in a hardship to a qualifying relative), *with* Resp. Br. at 15 (arguing for *Chevron* deference, noting that "[the statute] does not specify when the issue of qualifying relatives should properly be considered," and listing several possible options: "at the time the alien receives a notice to appear, at the time the alien files the cancellation of removal application, at the time the immigration judge (IJ) adjudicates the application, or at some other time"). Section 1229b(b)(1)(D) provides, in pertinent part, that the Attorney General may cancel removal when an applicant establishes "that removal would result in exceptional and extremely unusual hardship" to a relative, including a child "who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1)(D). While a "child" is defined as "an unmarried person under twenty-one years of age," *id.* § 1101(b)(1), "[§] 1229b(b)(1)(D) does not directly identify the point in time when the alien's removal must result in a

11

hardship to a qualifying relative." *Mendez-Garcia v. Lynch*, 840 F.3d 655, 659 (9th Cir. 2016).

The BIA acknowledged its authority to interpret ambiguous statutes in *Matter of Isidro-Zamorano*, 25 I. & N. Dec. 829 (BIA 2012), when it discussed several factors relevant to its interpretation and application of § 1229b(b)(1)(D). In *Isidro-Zamorano*, the alien's son—his qualifying relative—was under twenty-one years of age at the time the alien filed his application for cancellation of removal but turned twenty-one before the Immigration Court adjudicated the application. *Id.* at 831. The BIA ultimately concluded that the alien was ineligible for relief, reasoning that there was "no basis in law to conclude that an applicant . . . who loses his qualifying relationship before his application is even adjudicated on its merits by the Immigration Judge, nonetheless retains his eligibility for cancellation of removal." *Id.* The BIA emphasized, however, that the alien had not "alleged any improper delay on the part of the Immigration Judge" and that there had been "no undue or unfair delay in the course of [the] proceedings." *Id.* at 832. We note, as regards the case before us, that these are the very types of undue delay arguments that Petitioner has raised both before the Immigration Court and the BIA.

While the BIA considered the factual context presented in *Isidro-Zamorano* when applying § 1229b(b)(1)(D), it held that it lacked authority to do so here. Instead of addressing Petitioner's undue delay argument on the merits, the BIA held that "neither the B[IA] nor the Immigration Judge has *jurisdiction* to grant [Petitioner's] application in the absence of [Petitioner] establishing that he has a qualifying relative

12

at the time of the hearing." CAR at 4 (emphasis added). For the BIA to conclude that neither it nor the Immigration Court had jurisdiction to grant Petitioner's application was error.

To be sure, the BIA ruled against the alien in *Isidro-Zamorano*, concluding that he had failed to establish hardship to a qualifying relative at the time of adjudication. 25 I. & N. Dec. at 831. But contrary to Respondent's assertion that "the B[IA] is bound by" *Isidro-Zamorano*, the outcome of that case does not necessarily dictate the outcome in every case. Resp. Br. at 22. In *Isidro-Zamorano*, the BIA found that "a period of *just over a year* from service of the notice to appear to a determination on the merits is not an unreasonable or even unusual amount of time for the conclusion of removal proceedings." 25 I. & N. Dec. at 832 (emphasis added). The BIA also found that the alien had not "alleged any improper delay on the part of the Immigration Judge." *Id.* Thus, *Isidro-Zamorano* left open the possibility that, given a different set of facts, the BIA may interpret § 1229b(b)(1)(D) in a different way. *See id.* at 832; *see also Cardoza-Fonseca*, 480 U.S. at 448 (the BIA has the authority to give ambiguous statutory terms "concrete meaning through . . . *case-by-case* adjudication") (emphasis added).

Despite Respondent's contention that the BIA "specifically contemplated Petitioner's situation" and "addressed the same question" in *Isidro-Zamorano*, we disagree. Resp. Br. at 19, 23. We do not attribute the BIA's citation to *Isidro-Zamorano* as evidencing specific contemplation of Petitioner's unique circumstances. The procedural and factual background of this case differ greatly from *Isidro-Zamorano*.

13

First, Petitioner's delay was substantially longer than the alien's in *Isidro-Zamorano*. Petitioner filed his application for cancellation of removal in 2011, but he did not obtain a hearing on the matter until approximately *six years* later. In *Isidro-Zamorano*, the Immigration Court adjudicated the alien's application for cancellation within only *fourteen months* of the alien being served with a notice to appear. 25 I. & N. Dec. at 832. Moreover, before the BIA, Petitioner alleged and described what he contends was an improper delay on the part of the Immigration Court.[3] The adjudication of Petitioner's application for cancellation of removal was delayed because the Immigration Court, on its own motion, continued Petitioner's hearing five times, allegedly due to an overcrowded docket. Given this procedural history, which is undisputed, it was within the BIA's jurisdiction to interpret § 1229b(b)(1)(D) in a way that would not penalize Petitioner for the Immigration Court's delay.[4] Because the BIA erred in holding that it lacked jurisdiction to grant Petitioner's application and, in turn, failed to exercise its interpretive authority, we must remand. *See Elzour*

---

[3] Respondent acknowledges that Petitioner argued to the BIA that "the repeated rescheduling of his hearing dates was a violation of due process in that it deprived him of the opportunity to meaningfully present his application for cancellation." Resp. Br. at 11.

[4] Petitioner has filed a supplemental authority in which an Immigration Judge reasoned that "*Isidro* suggests an exception where there has been an 'undue or unfair delay' in the course of removal proceedings." *Matter of Linares-Recendiz*, No. AXXX-XX0-694, at 4 (Immig. Ct. June 18, 2019). The Immigration Judge found that the alien's case differed from *Isidro-Zamorano* because the alien's proceedings lasted for "nearly eight years." *Id.* The Immigration Judge then held that the "substantial duration of the proceedings" and "the Court's multiple postponements of [the alien's] hearings," rose "to the level of an 'undue or unfair delay.'" *Id.* at 5. *Linares-Recendiz* underscores Petitioner's argument that the BIA had jurisdiction to interpret § 1229b(b)(1)(D) differently than it did in *Isidro-Zamorano* in light of the facts presented.

14

*v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004) (when an agency "decides a case on a ground believed by an appellate court to be wrong, the case has to be remanded to the agency") (quoting *Palavra v. INS*, 287 F.3d 690, 693 (8th Cir. 2002)); *see also Negusie v. Holder*, 555 U.S. 511, 523 (2009) (where "the BIA has not yet exercised its *Chevron* discretion to interpret the statute" at issue, the proper course is to remand to the BIA to permit the agency to address the matter in the first instance).

"Ordinarily, a petitioner must exhaust all administrative processes available to hear his arguments before he may seek to bring those arguments to court." *Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1235 (10th Cir. 2010). We have recognized that "[n]eglecting to take an appeal to the BIA constitutes a failure to exhaust administrative remedies as to any issue that could have been raised, negating the jurisdiction necessary for subsequent judicial review." *Soberanes v. Comfort*, 388 F.3d 1305, 1308–09 (10th Cir. 2004). Generally, we will only consider arguments that a petitioner properly presents to the BIA. *Sidabutar v. Gonzales*, 503 F.3d 1116, 1118 (10th Cir. 2007).

Petitioner asserts that his petition seeking review of the BIA's dismissal for lack of jurisdiction falls under the "*sua sponte* exhaustion" rule set forth in *Sidabutar*. *See* Pet. Opening Br. at 28. Under this rule, a petitioner may "take an argument to court that he never pursued before the BIA" if three requirements are met: "[T]he BIA must: (1) clearly identify a claim, issue, or argument not presented by the petitioner; (2) exercise its discretion to entertain that matter; and (3) explicitly decide that matter in a full explanatory opinion or substantive discussion." *Garcia-Carbajal*, 625 F.3d at 1235. The precise argument Petitioner raises on appeal is that "[t]he B[IA] had *jurisdiction* to

15

entertain an alternate interpretation of when a child's age is to be assessed for cancellation." Pet. Opening Br. at 22 (emphasis added). Respondent does not address the *sua sponte* exhaustion factors set forth in *Garcia-Carbajal* or the BIA's jurisdictional ruling which is the focus of Petitioner's petition for review. Respondent's sole response to Petitioner's *sua sponte* exhaustion argument is to "[a]ssum[e] *arguendo* that the [statutory interpretation] argument was exhausted" and to address that argument on the merits by concluding the BIA "is bound by" *Isidro-Zamorano* and must "interpret the cancellation statute consistently regardless of the facts underlying the case." Resp. Br. at 22.

As to the first requirement of *sua sponte* exhaustion, the BIA clearly identified an issue not presented by Petitioner—that is, the agency's lack of jurisdiction. Following a citation to *Isidro-Zamorano*, the BIA concluded that neither the BIA nor the Immigration Court "has jurisdiction to grant [Petitioner's] application in the absence of . . . a qualifying relative at the time of [Petitioner's] hearing." CAR at 4. The BIA reached this conclusion even though neither party raised any argument to the BIA regarding the BIA's jurisdiction or *Isidro-Zamorano*. *See id.* at 15–17, 32–33. Petitioner, instead, raised an undue delay argument to the BIA, which the BIA acknowledged but failed to address. *See id.* at 4.

Second, the BIA exercised its discretion to take up the issue of jurisdiction. Again, neither party made any argument to the BIA regarding the BIA's jurisdiction or the application of *Isidro-Zamorano*. Both parties naturally assumed the BIA had

16

jurisdiction to interpret its own statutes, including § 1229b(b)(1)(D). *See Cardoza-Fonseca*, 480 U.S. at 448. Instead, the BIA raised the issue of its jurisdiction *sua sponte*.

Finally, the BIA "explicitly decide[d] the matter in a full explanatory opinion or substantive discussion." *Garcia-Carbajal*, 625 F.3d at 1235. Under this prong, "we of course defer to the agency's determination of the depth of explanation merited by a given question." *Id.* at 1240. Here, the BIA stated that it lacked jurisdiction to grant Petitioner's application, and it explained precisely why that was so. According to the BIA, the Immigration Court and the BIA both lacked "jurisdiction to grant [Petitioner's] application *in the absence of* [Petitioner] establishing that he ha[d] a qualifying relative at the time of [his] hearing." CAR at 4 (emphasis added). Having explained why jurisdiction was lacking, there was nothing left for the BIA to discuss. Because all three requirements for *sua sponte* exhaustion are met, Petitioner has exhausted his administrative remedies on this issue.

## C

We disagree with the dissent's exhaustion analysis in several respects. Initially, we disagree with the dissent's characterization of Petitioner's argument on appeal, which, perhaps, explains our differences. According to the dissent, Petitioner is arguing that he is "entitled to relief under the cancellation statute," and by this argument Petitioner is raising a statutory interpretation argument before this court that was not raised before the BIA. Dissent at 8. This description runs counter to Petitioner's appellate briefing. The argument that Petitioner raises on appeal is not that the BIA *should* have interpreted the statute in a certain manner but *could* have exercised its jurisdiction to make such a policy

17

choice. *See* Pet. Opening Br. at 27 ("It's entirely possible that the B[IA] might not want to make such a policy choice . . . But what is unambiguously clear is the agency's jurisdictional power to make such a decision."). That is why Petitioner argues that "the case should be remanded to the B[IA]" to let the agency make the determination in the first instance. *Id.*

As regards the first requirement for *sua sponte* exhaustion, the dissent asserts that the "least likely" thing the BIA meant by its jurisdictional sentence was that it lacked authority to interpret the cancellation statute or to apply *Isidro-Zamorano* to the facts of this case. Dissent at 13. The dissent states that, instead, the "most natural meaning" of the BIA's jurisdictional sentence is the BIA saying it cannot grant relief on a constitutional claim. *Id.* at 12. The dissent's argument, while creative, ignores the language the BIA used. The BIA stated that it lacked "jurisdiction to grant [Petitioner's] application [for cancellation of removal]" (a statutory remedy) because Petitioner did not have a qualifying relative at the time of his hearing, demonstrating that the BIA believed it could not consider the procedural history of Petitioner's case. CAR at 4. Notably, the BIA did *not* state that it lacked jurisdiction to grant relief on a *constitutional* claim. Rather, the BIA simply looked at the age of Petitioner's daughter at the time of his hearing, noted the undisputed fact that she was over the age of twenty-one, and then concluded as a result that it lacked jurisdiction to grant Petitioner's application for cancellation. We cannot, as the dissent contends, infer that the BIA was "expressing" its lack of authority to rule on constitutional challenges. Dissent at 12. The BIA did not

18

discuss, or even mention, its lack of authority to rule on constitutional challenges in its opinion.[5]

Moreover, the BIA's jurisdictional sentence was not merely a "[s]tray statement[]." *Id.* at 1240 ("Stray statements made in the course of answering the arguments the alien actually presented [to the BIA] do not, without more, indicate that the agency sought to *exercise its discretion* to do anything beyond what was asked of it."); *see* Dissent at 15. To the contrary, the BIA's jurisdictional sentence was the *sole reason* for its denial of Petitioner's application. *See* CAR at 4 ("[N]either the B[IA] nor the Immigration [Court] has jurisdiction to grant [Petitioner's] application in the absence of . . . a qualifying relative at the time of [Petitioner's] hearing. *Hence*, [Petitioner] is ineligible for cancellation of removal . . . [under] the Act.") (emphasis added).

Last, we disagree with the dissent's contention that the BIA did not explain why jurisdiction was lacking. Dissent at 16. The BIA said that it did not have jurisdiction to grant Petitioner's application "in the absence of [Petitioner] establishing that he ha[d] a qualifying relative at the time of [his] hearing." CAR at 4. While a "cryptic sentence" may not be explanatory or substantive, *Garcia-Carbajal*, 625 F.3d at 1240, the BIA in this instance made clear that it lacked jurisdiction to grant Petitioner's application and the reason why that was so—the age of Petitioner's daughter at the time of his hearing. The

---

[5] The dissent also asserts that *sua sponte* exhaustion can only apply when there is "unequivocal evidence" of the BIA's "careful consideration of the issue." Dissent at 5. The dissent cites no authority for this proposition, and we can find none.

19

dissent's contention that the BIA merely stated a conclusion is therefore unavailing. Dissent at 16.

## IV

For the foregoing reasons, we GRANT in part and DENY in part the petition for review, VACATE the order of the BIA dismissing Petitioner's appeal, and REMAND to the BIA for further proceedings consistent with this opinion.

18-9573, *Martinez-Perez v. Barr*

**HARTZ,** Circuit Judge, dissenting.

I respectfully dissent. I agree with almost all of the majority opinion—except for its treatment of exhaustion of administrative remedies. I cannot reconcile the opinion's analysis of exhaustion with this court's precedents.

Petitioner complains that excessive delays in his proceedings before the immigration judge (IJ) caused him to lose eligibility for cancellation of removal. His eligibility would have been based on hardship to his then-under-21 daughter, but she aged out during the prolonged proceedings. He argues that the Board of Immigration Appeals (BIA) could have construed the cancellation-of-removal statute to afford relief in his circumstances but that the BIA refused to consider such a statutory construction because it erroneously thought it lacked jurisdiction to do so.

It is undisputed that Petitioner did not argue to the BIA that it should construe the cancellation-of-removal statute to afford him relief or even argue that the BIA had jurisdiction to consider that statutory-interpretation argument. This failure to exhaust precludes relief in this court unless the "sua sponte exhaustion" exception applies. It is undisputed that the sua sponte exception does not apply unless the BIA decision denying Petitioner relief (1) clearly identified the argument now being made, (2) "ma[de] clear its wish to entertain the argument," and (3) explicitly decided the issue now argued by Petitioner "in a full explanatory opinion or substantive discussion." *Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1238–39 (10th Cir. 2010) (Gorsuch, J.). Remarkably, the majority opinion says that all three conditions are satisfied by the following sentence in

the BIA opinion: "[N]either the [BIA] nor the [IJ] has jurisdiction to grant his application in the absence of [Petitioner] establishing that he has a qualifying relative at the time of the hearing." Certified Administrative Record (CAR) at 4; *see* Maj. Op. at 16–17. As will be explained more fully below, that single sentence does not satisfy any of the three requirements for the sua sponte exception to apply. But that conclusion is probably obvious at the outset. On its face, this brief conclusory sentence could not possibly satisfy the requirement of "a full explanatory opinion or substantive discussion." *Garcia-Carbajal*, 625 F.3d at 1239. And it requires a fertile imagination to read the sentence as clearly identifying the argument Petitioner makes in this court. On the contrary, when the sentence is read in context, it clearly refers to a quite different argument, one which was made by Petitioner before the BIA. I proceed to explain.

## I.    The Exhaustion Requirement

Federal law does not permit an alien to challenge in this court a final order of removal unless the alien has presented the identical challenge to the BIA. *See* 8 U.S.C. § 1252(d) ("A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right . . . .") "To satisfy § 1252(d)(1), an alien must present the *same specific legal theory* to the BIA before he or she may advance it in court." *Garcia-Carbajal*, 625 F.3d at 1237. This is traditional administrative law. "A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the [agency] of an opportunity to consider the matter, make its ruling, and state

2

the reasons for its action." *Unemployment Comp. Comm'n of Alaska v. Aragon*, 329 U.S. 143, 155 (1946).

There is good reason for requiring exhaustion. "The purposes behind this rule are many and important: to avoid premature interference with agency processes, to give the agency the opportunity to correct its own errors, and to afford the parties the benefits of whatever expertise the agency may possess." *Garcia-Carbajal*, 625 F.3d at 1237. The exhaustion requirement also increases efficiency and expedites resolution of disputes. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006) ("[E]xhaustion promotes efficiency. Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court."). If issues not presented to an agency must be addressed during judicial review of the agency decision, the court often, probably most often, would need to remand the case to the agency to develop matters that could have been addressed in the original proceedings. *See Kroskob v. U.S. Dept. of Agric.*, 378 F. App'x 827, 831 (10th Cir. 2010) (exhaustion "'promotes judicial economy by avoiding needless repetition of administrative and judicial factfinding, and by perhaps avoiding the necessity of any judicial involvement at all if the parties successfully vindicate their claims before the agency'" (quoting *Andrade v. Lauer*, 729 F.2d 1475, 1484 (D.C. Cir. 1984)).

## II.     The Sua Sponte Exception

Nevertheless, we have recognized an exception to the exhaustion requirement when all the purposes of exhaustion have been undeniably satisfied.[1]  Sometimes there is no doubt that the BIA, despite the failure of the alien to present a matter to it, has sua sponte decided "to consider the matter, make its ruling, and state the reasons for its action." *Aragon*, 329 U.S. at 155.  We have stated that to satisfy this exception to the exhaustion requirement, "the BIA's ruling must: (1) clearly identify a claim, issue, or argument not presented by the petitioner; (2) demonstrate that the agency chose to exercise its discretion to entertain that matter; and (3) explicitly decide that matter in a full explanatory opinion or substantive discussion." *Garcia-Carbajal*, 625 F.3d at 1238–39.  "Each of these requirements is essential." *Id.* at 1239.

The sua sponte exception must be "construed narrowly." *Sidabutar v. Gonzales*, 503 F.3d 1116, 1122 (10th Cir. 2007).  After all, the exception is in play only when the alien did not present the issue to the BIA, and it is unusual for tribunals to go out of their way to address issues not presented to them; common sense and experience tell us that it is highly unlikely that the BIA considered, much less carefully considered, an issue that was only raised for the first time in later proceedings.  This is obviously one of the reasons why we require unequivocal evidence of such careful consideration of the issue

---

[1]  We did not need to address the possibility of an exception to the exhaustion requirement in this case, because Petitioner has not adequately presented the issue to us. He raises it only in a footnote, *see* Pet. Opening Br. at 28 n.2; and this court has declared that "[a]rguments raised in a perfunctory manner, such as in a footnote, are waived." *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) (en banc).  But the panel majority has exercised its discretion to address the issue, so I am responding to it.

by the BIA.  Also, the issue must be stated with precision.  The exception is limited to those occasions when the BIA "effectively exhausts the available administrative remedies for the petitioner, so that the petitioner may later pursue those arguments in court." *Garcia-Carbajal*, 625 F.3d at 1235.  Since the petitioner himself "must present *the same specific legal theory* to the BIA before he or she may advance it in court," *id*. at 1237, it is hard to see how we can say that the BIA has exhausted an issue for the petitioner if it has not precisely identified the identical legal theory that the petitioner is advancing on review in this court.

An example of proper application of the exception is *Sidabutar*, 503 F.3d at 1118, where the petitioner's appeal to the BIA had presented only a challenge to the denial of his asylum claim.  The BIA, however, issued a final substantive opinion not only on that claim but also on his unappealed claims addressing restriction on removal and relief under the Convention Against Torture.  *See id.* at 1119.  The BIA decision expressly addressed the unappealed claims, adopted the immigration judge's decision on those claims, expressly concurred with the immigration judge's conclusions, summarized the immigration judge's factual findings, and even "provided its own independent grounds for some of the claims." *Id.*  We held that the purposes of exhaustion had been satisfied.  *See id.* at 1119–22.

It is also worth noting when we have held that the sua sponte exception does not apply.  In *Garcia-Carbajal* the immigration judge had ruled that the petitioner was ineligible for cancellation of removal because of a prior conviction for a crime involving moral turpitude.  *See* 625 F.3d at 1235–36; 8 U.S.C. § 1229b(b)(1)(C); *id*. § 1182(a)(2).

5

In his appeal to the BIA the petitioner argued that the IJ had used an improper process to analyze the question of whether he had committed a crime involving moral turpitude but did not argue the substantive question whether his prior state conviction had in fact been for a crime involving moral turpitude. *See id*. at 1236. In his petition for review in this court, however, the petitioner abandoned the procedural argument and argued instead the substantive issue, contending that violations of the state statute were never crimes involving moral turpitude and that his particular offense was not such a crime. *See id*. He contended that he could raise the issue under the sua sponte exception to the exhaustion requirement. We said that the "closest thing we have to evidence that the BIA identified and addressed" the petitioner's argument was the following sentence at the end of the BIA opinion: "As such, the Immigration Judge correctly determined that the crime involved moral turpitude. *See Matter of Solon*, 24 I. & N. Dec. 239 (BIA 2007), *citing Matter of Fualaau,* 21 I. & N. Dec. 475 (BIA 1996)." *Id*. at 1239 (internal quotation marks omitted). We responded: "Because *Solon* and *Fualaau* spoke to when a crime is and isn't one 'involving moral turpitude,' we suppose it's possible the BIA anticipated the substantive question whether [the petitioner's] crime qualified and decided that it did. But it's also possible the Board didn't." *Id*. We ruled that none of the three requirements for sua sponte exhaustion was satisfied: the issue was not clearly identified, nothing demonstrated that the BIA had exercised its discretion to consider the issue, and "nothing in the BIA's opinion could be called a full explanatory opinion or substantive discussion deciding [the petitioner's] current arguments." *Id*. at 1239–40.

In the case before us, I, like the court in *Garcia-Carbajal*, fail to see how the BIA's single sentence could satisfy any of the three *Garcia-Carbajal* requirements, much less all three. To assess the three requirements, one must begin with the procedural context.

## III. Petitioner's Proceedings

Early in the proceedings before the IJ, Petitioner conceded removability but argued that he was entitled to cancellation of removal on the ground that his removal would create "exceptional and extremely unusual hardship" to his daughter, who was under 21 and a citizen of the United States. 8 U.S.C. § 1229b(b)(1)(D). Later, however, he abandoned that argument because the daughter had turned 21 (so she was no longer a "child" under the statutory provision) while the proceedings before the IJ were pending. This abandonment was based on the BIA precedential decision in *Matter of Isidro-Zamorano*, 25 I. & N. Dec. 829, 831 (BIA 2012), which ruled that the cancellation-of-removal statute requires the alien to have a qualifying relative at the time the request for cancellation is adjudicated. As an alternative ground for relief, Petitioner, although having conceded that he was not entitled to relief under the statute, argued that his case should be administratively closed (thereby ending the removal proceedings) in the interest of fairness because agency delays had caused his daughter to age out as a qualifying relative. The IJ expressed sympathy but ruled that administrative closure was inappropriate and that the IJ "lack[ed] the authority to exercise prosecutorial discretion and close his case as an equitable remedy." CAR at 65.

7

Petitioner filed an appeal with the BIA. He did not suggest that *Isidro-Zamorano* had misinterpreted the cancellation statute, that *Isidro-Zamorano* implicitly recognized an exception in the circumstances alleged by Petitioner, or that *Isidro-Zamorano* should be narrowly construed so that it did not apply to his situation. He did not even cite that opinion. He raised no argument that he was entitled to relief under the cancellation-of-removal statute. He argued only that he was denied due process (so his removal proceedings should be terminated) because his daughter would not have aged out had his hearing not been inexcusably delayed for so many years.

## IV.    Petitioner's Petition to This Court

Before this court, Petitioner offers a legal theory for relief that he never presented to the BIA (or the IJ for that matter). The theory he now presents is that he is entitled to relief under the cancellation statute because (1) his hearing before the IJ was excessively delayed through no fault of his own; (2) if the hearing had not been excessively delayed, his cancellation-of-removal claim would have been adjudicated before his daughter turned 21; and (3) the cancellation-of-removal statute should be interpreted to make an alien eligible for cancellation even if his child is now older than 21, if the reason why the child has aged out is that the adjudication by the IJ was excessively delayed through no fault of the alien. He points out that the BIA decision in *Isidro-Zamorano* noted that there had not been any "improper delay" in that case; he then makes a reasonable argument that the BIA might therefore consider construing the cancellation statute to reach a different conclusion when there had been lengthy inexcusable delay. Aplt. Br. at 26 (internal quotation marks omitted).

8

Petitioner does not, however, ask this court to interpret the cancellation statute in the first instance. Rather, the relief he seeks is that we remand this case to the BIA to interpret the statute. He contends that the BIA did not even try to interpret the statute in his favor because it erroneously thought that it lacked jurisdiction to do so. He argues that we should correct this misconception by the BIA and then require it to do its job of statutory interpretation.

This is Petitioner's first effort to raise a statutory-interpretation issue. He does not dispute that he said nothing in his appeal to the BIA about interpreting the cancellation statute in a way that would afford him relief. To be sure, he argued before the BIA that the delay in the proceedings before the IJ had improperly caused his daughter to age out. But his argument there was an estoppel argument founded on due process, not a proposed interpretation of the relevant statute. And he was not seeking cancellation of removal, as he is now; he sought termination of the removal procedures. To repeat what we said in *Garcia-Carbajal*, "To satisfy [the statutory exhaustion requirement], an alien must present the *same specific legal theory* to the BIA before he or she may advance it in court." 625 F.3d at 1237. I should add that I do not read the majority opinion as suggesting that Petitioner exhausted before the BIA his argument that he is entitled to cancellation of removal under the statute or even that the BIA has jurisdiction to consider that argument.[2]

_____

[2] There is a lurking exhaustion issue that I need not address but which could be dispositive. Ordinarily, to exhaust his present claim for relief, Petitioner would have had to raise with the BIA both (1) that it has authority to interpret the cancellation statute to provide him relief and (2) that the proper interpretation of the cancellation statute would

9

## V.  Application to This Case

The question before us is whether the issue raised by Petitioner in this court—that the BIA had jurisdiction to interpret the cancellation-of-removal statute in a manner that would permit him to obtain cancellation—was fully addressed by the BIA even though it had not been raised by Petitioner in proceedings before the BIA.  In other words, we must decide whether Petitioner's failure to exhaust before the agency is excused because the BIA satisfied the sua sponte exception to the exhaustion requirement—that is, it clearly identified the issue, clearly chose to exercise its discretion to entertain it, and explicitly decided the issue in a full explanatory opinion or substantive discussion.  *See id.* at 1238–39.

The answer is clearly no.  The only relevant discussion in the BIA decision was the following three-sentence passage:

> **[1]** In addition, [Petitioner] argues that the [IJ] denied him due process by delaying the adjudication of his application for cancellation of removal until after his qualifying relative passed the age of 21, which precluded him from establishing eligibility.  *See Matter of Isidro-Zamorano*, 25 I&N Dec. 829 (BIA 2012) (holding that an applicant for cancellation of removal whose son or daughter met the definition of a "child" when the application

afford him relief.  He presented neither issue to the BIA.  The majority opinion decides that he did not need to raise the first issue because it was raised sua sponte by the BIA.  But the sua sponte exception is clearly not available on the second issue.  Should Petitioner be better off under the sua sponte exception than if he had actually preserved the first issue before the BIA but, as in fact was the case, had not preserved the second?  *Cf. Garcia-Carbajal*, 625 F.3d at 1236 (petitioner raised before the BIA the procedural question whether the IJ had engaged in the proper analysis to determine whether prior conviction was for a crime involving moral turpitude but had not raised the substantive question whether his prior conviction was in fact for a crime involving turpitude; substantive issue was barred from review for failure to exhaust).  That is, is it proper for us to remand to the BIA to determine an issue that was never raised by Petitioner before the BIA?

10

was filed but turned 21 before the [IJ] adjudicated the application on the merits no longer has a qualifying relative under [§ 1229b(b)(1)(D)]. **[2]** However, neither the [BIA] nor the [IJ] has jurisdiction to grant his application in the absence of [Petitioner] establishing that he has a qualifying relative at the time of the hearing. **[3]** Hence, [Petitioner] is ineligible for cancellation of removal because he is unable to satisfy the requirement set forth under [§ 1229b(b)(1)(D)].

CAR 3–4.

The first *Garcia-Carbajal* requirement is that the BIA "clearly identify [the] claim, issue, or argument" that the petitioner seeks to raise in this court. 625 F.3d at 1238–39. I am baffled that the panel majority thinks that the BIA decision "clearly identif[ied]" the issue now being presented by Petitioner—namely, that the BIA has jurisdiction to determine whether to interpret the cancellation-of-removal statute in a manner that would afford relief to Petitioner.[3] Nothing in the passage suggests any identification by the BIA of the issue whether it should recognize an exception to *Isidro-Zamorano*'s interpretation of § 1229b(b)(1)(D) to take into account egregious delays of adjudication proceedings.

The majority opinion hangs its hat on the second sentence in the above-quoted passage from the BIA opinion: "However, neither the [BIA] nor the [IJ] has jurisdiction to grant his application in the absence of [Petitioner] establishing that he has a qualifying

---

[3] Petitioner's opening brief stated his position as follows:

> [The BIA] erred when it claimed . . . that it lacked "jurisdiction" to consider him as having a qualifying relative for cancellation. [I]t retained the quasi-legislative power to interpret the ambiguous cancellation statute in a way that would have fixed the age of [Petitioner's] daughter as of the date he filed his cancellation application, in light of the "undue or unfair delay" in the scheduling of his final hearing.

Aplt. Br. at 27.

11

relative at the time of the hearing." CAR 4.  But that sentence is in itself ambiguous.  It certainly does not "clearly identify" that the BIA cannot grant the application because it lacks jurisdiction to interpret the cancellation-of-removal statute favorably to Petitioner.

On the contrary, there is a compelling reason to think that the sentence means something quite different.  The immediately preceding sentence—the first sentence of the quoted passage—describes an argument that Petitioner *did* make to the BIA.  It states, "In addition, [Petitioner] argues that the [IJ] denied him due process by delaying the adjudication of his application for cancellation of removal until after his qualifying relative passed the age of 21, which precluded him from establishing eligibility." *Id*. at 3. The majority opinion strangely asserts that the BIA "failed to address" this due-process argument by Petitioner.  Maj. Op. at 16.  But the BIA's next sentence (the jurisdiction sentence) begins with the word *However*.  That is a word that writers use when they are about to reject what has just been said.  In this case, what had just been said in the previous sentence was that Petitioner had argued he was denied due process.  One would expect the remainder of the sentence (after the word *However*) to be a response to, and a rejection of, that due-process argument, not the introduction of a new topic totally unresponsive to the argument described in the prior sentence.  The most natural meaning of the jurisdiction sentence is that the BIA is saying that it does not have authority (jurisdiction) to consider Petitioner's claim that application of the cancellation statute would, in light of the excessive delay, deny him constitutional due process.  In other words, it is saying that since Petitioner has not satisfied the statutory requirements for cancellation (a point not disputed by Petitioner before the IJ or BIA), the BIA's hands are

12

tied, even in the face of a constitutional argument. This proposition would be in keeping with settled BIA law. Indeed, *Isidro-Zamorano* itself had declared that "[t]o the extent that the [alien] raises constitutional challenges to any statutes or regulations, we have no authority to rule on such issues." *Isidro-Zamorano*, 25 I. & N. Dec. at 832. Why infer that the BIA was doing anything more than expressing that point?

In contrast, it is hard to believe that the jurisdiction sentence in the BIA opinion means that the BIA thinks it has no authority to examine its own precedent to determine whether it would permit, or even has already implicitly recognized (recall that *Isidro-Zamorano* noted there had not been any "undue or unfair delay" in that case, 25 I. & N. Dec. at 832), the statutory right to cancellation of removal argued by Petitioner in this court. Why would the BIA bother to address its power to do something that no one had asked it to do? Absent from the BIA's opinion is any indication that it was responding to a possible contention that it had the authority to interpret the cancellation statute to afford Petitioner relief. And it would have been quite remarkable for the BIA to assert that it lacks jurisdiction to engage in statutory interpretation yet not cite any authority in support of the proposition. I cannot recall a tribunal stating that it lacks jurisdiction to construe its own precedents. Of all the possible meanings of the jurisdiction sentence in the BIA opinion, one of the least likely is that the BIA was pronouncing (without any citation to authority or reasoned argument) that it lacks authority to interpret the cancellation statute,

13

construe *Isidro-Zamorano*, or limit the scope of that opinion.[4]  That likelihood is particularly slim since the issue was never presented to the BIA.

But even if one could strain to read the jurisdiction sentence as a pronouncement by the BIA that it lacks jurisdiction to conduct statutory interpretation, it is far too much of a stretch for me, and for our precedents, to say that the jurisdiction sentence "clearly identif[ies]" that issue.  *Garcia-Carbajal*, 625 F.3d at 1238. The majority opinion's statement that "the BIA raised the issue of its jurisdiction sua sponte," Maj. Op. at 17, is a classic *ipse dixit* without supporting evidence.

Of course, if the first of the requirements for the sua sponte exception (clearly identifying the issue not raised by the petitioner) is not satisfied, it is impossible to satisfy the other two requirements (choosing to entertain the issue, and fully explaining the decision resolving the issue).  But a few additional comments are in order.

To satisfy the second requirement, "the BIA's ruling must . . . demonstrate that the agency chose to exercise its discretion to entertain [the unexhausted] matter."  *Garcia-Carbajal*, 625 F.3d at 1238–39.  Given that Petitioner had never raised any argument about how the cancellation statute should be construed, one would expect the BIA

---

[4]  Footnote 4 of the majority opinion notes that Petitioner has submitted as supplemental authority a decision by an immigration judge that distinguished *Isidro-Zamorano* on the ground that the proceedings had lasted almost eight years.  The footnote says that this supplemental authority "underscores Petitioner's argument that the BIA had jurisdiction to interpret § 1229b(b)(1)(D) differently than it did in *Isidro-Zamorano* in light of the facts presented."  Maj. Op. at 14 n.4.  True.  But it also underscores that the judges in the immigration system know that they have jurisdiction to construe statutes and BIA precedents.  The majority opinion apparently concludes that the BIA judge in this case is one of the rare exceptions who think otherwise.  I think that conclusion is fanciful.

14

opinion (if the BIA had chosen to exercise its discretion to address the matter) to explicitly identify the new issue and state that it had decided to dispose of it (perhaps to clarify matters for the future). The BIA opinion does no such thing. It cites *Isidro-Zamorano* as authority that the statutory requirements had not been satisfied in Petitioner's case. But there is nothing to indicate that the BIA had decided to consider whether it could recognize a statutory exception to the general rule stated in that precedential opinion. The BIA opinion does not discuss statutory interpretation or when to distinguish precedent, much less the possibility of construing the cancellation statute in the manner that Petitioner argues in this court. To repeat the jurisdiction sentence, it states: "However, neither the [BIA] nor the [IJ] has jurisdiction to grant his application in the absence of [Petitioner] establishing that he has a qualifying relative at the time of the hearing." CAR 4. I fail to see how the majority opinion can treat that sentence as a clear expression by the BIA that it is considering whether it had jurisdiction to interpret the cancellation statute, an issue never raised by Petitioner.

As we have previously emphasized, "Stray statements made in the course of answering the arguments the alien actually presented do not, without more, indicate that the agency sought to exercise its discretion to do anything beyond what was asked of it." *Garcia-Carbajal*, 625 F.3d at 1240 (emphasis omitted). I agree with the majority opinion that the jurisdiction sentence is not a stray statement. It appears immediately following a sentence noting Petitioner's due-process argument. It is clearly addressing, and disposing of, that argument, stating that it does not have jurisdiction (authority) to consider that constitutional issue. But if, as the majority opinion insists, we are to read the jurisdiction

15

sentence as addressing an issue that had not been raised by Petitioner and had not been described or even sketched in the BIA opinion, then the jurisdiction sentence would undoubtedly fit the notion of a stray sentence—one disconnected from any discussion before or after. To read the sentence as the majority opinion does, pregnant with meaning on a subject that neither the parties nor the agency had conceived, could well serve as Exhibit 1 of the dangers of excessive imagination in construing stray statements.

If the jurisdiction sentence in the BIA opinion can fill the bill for the second requirement of the exhaustion exception, we should make things easy for everyone and just eliminate that requirement.

Finally, the third requirement—that the BIA opinion "explicitly decide [the] matter in a full explanatory opinion or substantive discussion." *Id.* The majority opinion is satisfied with the bald jurisdiction sentence in the BIA opinion: "[N]either the [BIA] nor the [IJ] has jurisdiction to grant his application in the absence of [Petitioner] establishing that he has a qualifying relative at the time of the hearing." CAR at 4. But it is a distortion of the English language to say that this unelaborated sentence "explicitly decide[d]" that it lacked jurisdiction to interpret the cancellation statute "in a full explanatory opinion or substantive discussion." *Garcia-Carbajal,* 625 F.3d at 1239. The majority opinion states that the BIA opinion "explained precisely why" it lacked jurisdiction. Op. at 17.[5] Really? At best, the BIA states its conclusion. It utterly fails to

_____

[5] I quote the full discussion in the majority opinion:

> Here, the BIA stated that it lacked jurisdiction to grant Petitioner's application, and it explained precisely why that was so. According to the BIA, the

16

explain why the BIA lacked jurisdiction to engage in statutory interpretation. *See Garcia-Carbajal*, 625 F.3d at 1239 ("Whenever an agency states a conclusion . . . it impliedly rejects any number of unmade potential arguments. But *that* doesn't mean the agency noticed those arguments, let alone considered and ruled on them.") Ruling that the third requirement was not met in *Garcia-Carbajal*, we said that "one cryptic sentence followed by two citations to prior authority cannot be fairly characterized explanatory or substantive." *Id.* at 1240. Here, the sentence relied on by the panel majority is not followed by even one citation to authority that might clarify why the BIA lacks jurisdiction to conduct traditional statutory construction.

This court has recognized an exception to the exhaustion requirement in our review of decisions by the BIA. But the exception is to be "construed narrowly." *Sidabutar*, 503 F.3d at 1122. Our precedent sets forth three requirements that must be satisfied for us to excuse exhaustion. All must be clearly satisfied. If anything is clear in this case, it is that not one of the requirements is satisfied.

It is worth recalling the statement by the BIA considered by *Garcia-Carbajal* in declining to apply the sua sponte exception to exhaustion. The petitioner argued in this court that his criminal conviction was not for a crime involving moral turpitude. The

---

Immigration Court and the BIA both lacked "jurisdiction to grant [Petitioner's] application *in the absence of* [Petitioner] establishing that he ha[d] a qualifying relative at the time of [his] hearing." CAR at 4 (emphasis added). Having explained why jurisdiction was lacking, there was nothing left for the BIA to discuss.

Maj. Op. at 17. Apparently the majority opinion thinks that saying that jurisdiction is lacking in the absence of a qualifying relative is a meaningful explanation.

BIA had written, "As such, the Immigration Judge correctly determined that the crime involved moral turpitude."  625 F.3d at 1239 (internal quotation marks omitted).  We held that none of the three requirements for applying the sua sponte exception had been satisfied.  The sentence in the BIA opinion relied on by the majority opinion has an even weaker claim to satisfy the exception.  I cannot join in the implicit overruling of our precedent.