**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**December 2, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

CRISTOBAL NUNEZ-ROBLES,

    Petitioner,

v.

MERRICK B. GARLAND,
United States Attorney General,

    Respondent.

No. 20-9629
(Petition for Review)

### ORDER AND JUDGMENT[*]

Before **HARTZ**, **McHUGH**, and **CARSON**, Circuit Judges.

Cristobal Nunez-Robles, a native and citizen of Mexico, petitions for review of a decision by the Board of Immigration Appeals ("BIA"), denying his third motion to reopen his proceedings. Exercising jurisdiction under 8 U.S.C. § 1252(a), we deny the petition.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

On March 23, 2012, the Department of Homeland Security ("DHS") served Nunez-Robles with a notice to appear ("NTA"), alleging he unlawfully entered the United States in 1995 and ordering him to appear before an immigration judge ("IJ") at the detention facility in Aurora, Colorado, "on March 23, 2012, at 12:00 a.m." Admin. R. Vol. 2 at 613. Nunez-Robles signed the NTA and acknowledged service. He also signed under the section titled "Request for Prompt Hearing," which stated: "To expedite a determination in my case, I request an immediate hearing. I waive my right to a 10-day period prior to appearing before an immigration judge." *Id.* at 614.

On March 28, DHS filed the NTA with the Immigration Court and Nunez-Robles's counsel filed a notice of appearance. DHS also served Nunez-Robles with a notice of hearing, stating his case was scheduled for a master hearing the following morning on March 29 at 9:00 a.m. According to Nunez-Robles, his counsel appeared at that hearing, and the matter was continued for counsel to "become prepared." Pet'r's Br. at 34. At the next hearing on June 28, 2012, Nunez-Robles's counsel admitted the factual allegations in the NTA and indicated Nunez-Robles was seeking cancellation of removal under 8 U.S.C. § 1229b. Additional hearings were held on November 6, 2013, April 17, 2014, December 18, 2014, and December 31, 2014. At each hearing, Nunez-Robles was represented by counsel.

Ultimately, the IJ denied Nunez-Robles's application for cancellation of removal, and the BIA upheld that decision. Nunez-Robles separately moved to

2

reopen his proceedings, and the BIA denied the motion.  He sought review in this court, and after consolidating the matters, we upheld the BIA's rulings and dismissed as unexhausted a due process argument that Nunez-Robles did not raise to the BIA. *Nunez-Robles v. Sessions*, 722 F. App'x 756, 757 (10th Cir. 2017).

While his petition for review was pending before this court, Nunez-Robles filed a second motion to reopen, alleging that circumstances in Mexico had changed and that he was entitled to asylum, withholding of removal, and relief under the Convention Against Torture.  The BIA denied the motion.

Nunez-Robles petitioned for review of the denial of his second motion to reopen and argued for the first time that the IJ never had jurisdiction.  He relied on *Pereira v. Sessions*, 138 S. Ct. 2105, 2113-14 (2018), which held that "[a] putative [NTA] that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section 1229(a)'" for purposes of the stop-time rule and cancellation of removal under § 1229b(d)(1)(A).  Nunez-Robles's NTA, which was served on March 23, 2012, ordered him to appear at a hearing scheduled for 12:00 a.m. that same day.  He thus argued the NTA was defective and failed to confer jurisdiction on the IJ.  We upheld the denial of his motion and dismissed his *Pereira* argument as unexhausted.  *Nunez-Robles v. Barr*, 794 F. App'x 785, 786-87 (10th Cir. 2019).  Nevertheless, we noted the Tenth Circuit had "reject[ed] the merits of a similar *Pereira* jurisdictional challenge."  *Id.* at 788 n.2 (citing *Lopez-Munoz v. Barr*, 941 F.3d 1013, 1015-18 & n.4 (10th Cir. 2019)).

3

In 2020, Nunez-Robles filed a third motion to reopen, seeking to exhaust his *Pereira* argument and contending the IJ lacked jurisdiction based on his defective NTA. He also argued: (1) his notice of hearing was defective because his initial hearing was scheduled six days after service of the NTA—less than the statutory ten-day period designed to provide noncitizens with an opportunity to secure counsel, *see* 8 U.S.C. § 1229(b)(1); and (2) his due process rights were violated because the NTA set his initial hearing for a time and date that had already passed.

The BIA agreed the NTA was defective but concluded the defects did not deprive the IJ of jurisdiction. The BIA noted the issue in *Pereira* was "narrow" and concerned only the stop-time rule. Admin. R. Vol. 1 at 3 (quoting *Pereira*, 138 S. Ct. at 2110, 2113). The BIA further recognized that we have held the requirements for NTAs are claim-processing rules and not jurisdictional. *See Martinez-Perez v. Barr*, 947 F.3d 1273, 1277-79 (10th Cir. 2020). As for Nunez-Robles's additional arguments, the BIA concluded: (1) the notice of hearing was not deficient under § 1229(b)(1)—and Nunez-Robles was not denied the right to counsel—because he signed the portion of the NTA waiving his right to a ten-day period to obtain counsel, Admin. R. Vol. 1 at 4-5; and (2) he failed to show prejudice for his due process claim "because no hearing was conducted on the date specified in the NTA and he received notices of hearing for, and appeared at, all scheduled hearings without issue," *id.* at 5. The BIA therefore denied Nunez-Robles's motion. He timely petitioned for review.

4

## DISCUSSION

In general, an alien may file only one motion to reopen, which must be filed within ninety days of the final administrative decision. *See* 8 C.F.R. § 1003.2(c)(2). However, at least at the time of Nunez-Robles's third motion to reopen, the BIA had the discretionary authority to reopen proceedings sua sponte. 8 C.F.R. § 1003.2(a).[1] Although we lack jurisdiction to review the exercise of such authority, we retain "jurisdiction to review constitutional claims or questions of law." *Salgado-Toribio v. Holder*, 713 F.3d 1267, 1270-71 (10th Cir. 2013) (internal quotation marks omitted); *see also* 8 U.S.C. § 1252(a)(2)(D). And as to those matters, our standard of review is de novo. *Mena-Flores v. Holder*, 776 F.3d 1152, 1162 (10th Cir. 2015).

## I.     Whether the Defective NTA Deprived the IJ of Jurisdiction

Nunez-Robles first contends that the IJ lacked jurisdiction to order his removal due to defects in his NTA. Circuit precedent forecloses this argument.[2]

In *Lopez-Munoz*, we assumed arguendo that the NTA was defective because it omitted the time and place of the removal hearing. *See* 941 F.3d at 1015 (citing 8 U.S.C. § 1229(a)(1)(G)(i)). But we held, after examining *Pereira* as well as the

---

[1] The regulation, as modified effective January 15, 2021, "prohibits IJs and the BIA from reopening or reconsidering a case sua sponte except to correct minor mistakes." *Berdiev v. Garland*, 13 F.4th 1125, 1138 n.6 (10th Cir. 2021) (internal quotation marks omitted). As we recently observed, the "modified rule is apparently the subject of a nationwide preliminary injunction." *Id.*

[2] The government contends Nunez-Robles forfeited this argument by not raising it in earlier BIA proceedings. But the BIA did not deem the argument forfeited, and our review is limited to the BIA's reasoning. *See Ritonga v. Holder*, 633 F.3d 971, 974 (10th Cir. 2011).

5

relevant statutes and rules, that the "defect would not preclude jurisdiction." *Id.* We thus joined other "circuits in declining to read *Pereira* as an implicit pronouncement on an [IJ's] jurisdiction." *Id.* at 1018. Later, in *Martinez-Perez*, we clarified that the requirements for NTAs "are non-jurisdictional, claim-processing rules." 947 F.3d at 1278. As we explained, "a party's failure to comply with a claim-processing rule even when framed in mandatory terms does not deprive a court of authority to hear a case." *Id.* at 1279 (internal quotation marks omitted). Therefore, although the NTA in *Martinez-Perez* "was defective, that did not divest the Immigration Court of jurisdiction" and prevent it from lawfully removing him. *Id.*

Nunez-Robles insists his case can be distinguished from *Martinez-Perez*. He argues his NTA was not merely defective, but was grossly deficient on the grounds that: (1) it was "facially incorrect" because the hearing was scheduled prior to service of the NTA and at midnight, outside of court hours; and (2) it amounted to a "failure to prosecute" because the NTA was filed after the scheduled hearing, contrary to agency procedures. Pet'r's Br. at 18 (internal quotation marks omitted).

In *Martinez-Perez*, this court held, without caveat, that the requirements related to NTAs are non-jurisdictional. 947 F.3d at 1278. The court did not suggest, let alone recognize, a sliding scale whereby the requirements related to NTAs become jurisdictional due to the number or nature of the alleged defects. In any event, Nunez-Robles fails to show that the differences with his NTA are materially significant. Although he states that his NTA listed an "impossible" hearing date and time, Pet'r's Br. at 30, the NTA in *Martinez-Perez* provided no hearing date and time

6

at all, 947 F.3d at 1276. Nunez-Robles offers no explanation, and we know of none, why an NTA with erroneous time-and-date information, unlike an NTA lacking time-and-date information, should be accorded jurisdictional import. And to the extent he contends the NTA should not have been filed after the listed hearing date and time, such a defect plainly concerns claim processing, not jurisdiction. *See id.* at 1279 ("A claim processing rule is a rule that seeks to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." (internal quotation marks and brackets omitted)).

Ultimately, Nunez-Robles's NTA was defective, as the BIA acknowledged. But under *Martinez-Perez*, the defects concerned claim processing, not jurisdiction. Accordingly, the IJ had jurisdiction to order his removal.

## II.      Whether the Notice of Hearing Violated § 1229(b)(1)

Nunez-Robles next contends that his notice of hearing was deficient and that he was denied his right to counsel when his first hearing was scheduled less than ten days after service of his NTA, in violation of § 1229(b)(1). We find no error.

Under § 1229(b)(1), the first removal "hearing date shall not be scheduled earlier than 10 days after the service of the [NTA]." This ten-day period is intended to afford the noncitizen "the opportunity to secure counsel before the first hearing date." § 1229(b)(1).[3] However, the noncitizen can waive the ten-day period and "request[] in writing an earlier hearing date." *Id.*

_____

[3] Nunez-Robles describes § 1229(b)(1) as providing a "Right to Counsel." Pet'r's Br. at 33. But the statute provides only a waivable opportunity to seek

7

On March 28, 2012, DHS served Nunez-Robles with a notice of hearing, stating that his first hearing would be held on March 29—six days after he was served with the NTA on March 23. But Nunez-Robles signed the "Request for Prompt Hearing" on the back of the NTA, "request[ing] an immediate hearing" and "waiv[ing] [his] right to a 10-day period prior to appearing before an [IJ]." Admin. R. Vol. 2 at 614. The BIA therefore concluded that because he "elected to waive his right to a 10-day period to secure counsel," the notice of hearing was not "statutorily deficient under [§ 1229(b)(1)]." Admin. R. Vol. 1 at 4-5.

Nunez-Robles concedes that he signed the waiver of the ten-day period. But he insists that because the NTA was defective, so too was the waiver. Nunez-Robles cites no authority for this proposition. In any event, he did not raise this argument to the BIA. In his motion, he invoked § 1229(b)(1) only in the context of arguing that his notice of hearing did not cure the defective NTA for purposes of his jurisdictional claim. Specifically, he contended that even if a notice of hearing could cure a defective NTA, his notice of hearing was deficient because it scheduled his hearing only six days from the service of the NTA. And he insisted his "statutorily-deficient [notice of hearing] should not be found sufficient to mend [his] statutorily-deficient NTA." Admin R. Vol. 1 at 31. But he did not acknowledge his waiver of the ten-day period, much less contend that his defective NTA invalidated his waiver. Because

---

counsel. As we have held, "there is no right to appointed counsel in [removal] proceedings," and a noncitizen's right to due process "is not equated automatically with a right to counsel." *Michelson v. I.N.S.*, 897 F.2d 465, 468 (10th Cir. 1990).

Nunez-Robles did not exhaust this issue, we lack jurisdiction to consider it.  *See*

8 U.S.C. § 1252(d)(1); *Robles-Garcia v. Barr*, 944 F.3d 1280, 1283 (10th Cir. 2019).

Accordingly, because Nunez-Robles waived his right to the ten-day period

under § 1229(b)(1), he has failed to show that his notice of hearing was deficient or

that his due process right to counsel was violated.

### III.    Whether the Defective NTA Violated Due Process

Finally, Nunez-Robles contends his due process rights were violated because

the hearing date and time listed on his NTA "was both impossible and had already

passed."  Pet'r's Br. at 34.  His claim fails because he has not shown any prejudice.

"Because [noncitizens] do not have a constitutional right to enter or remain in

the United States, the only protections afforded are the minimal procedural due

process rights for an opportunity to be heard at a meaningful time and in a

meaningful manner."  *Arambula-Medina v. Holder*, 572 F.3d 824, 828 (10th Cir.

2009) (internal quotation marks omitted).  For a due process claim, a noncitizen

"must establish not only error, but prejudice."  *Alzainati v. Holder*, 568 F.3d 844, 851

(10th Cir. 2009).[4]

---

[4] Nunez-Robles contends prejudice is not required when an agency violates its own promulgated regulations that were "designed to protect fundamental statutory or constitutional rights."  Pet'r's Br. at 34-35 (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)).  He argues that "the Department of Justice . . . issued regulations about when an NTA should be accepted or rejected upon service by DHS at the initiation of removal proceedings" and that these regulations were intended to protect a noncitizen's "statutory and constitutional rights of due process." *Id.* at 35.  But he does not identify any such regulations and, instead, appears to be referencing a policy memorandum from 2018—six years after he was served with his

The BIA concluded that the NTA, while defective, did not prejudice Nunez-Robles and, thus, did not violate due process. Although he asserts the hearing date and time on his NTA was outside of court hours and predated service of the NTA, the BIA noted "no hearing was conducted on [that] date," Admin. R. Vol. 1 at 5. Instead, the first hearing was held six days later, at which Nunez-Robles's counsel appeared and was granted a continuance to adequately prepare. The BIA further noted that Nunez-Robles "received notices of hearing for, and appeared at, all scheduled hearings without issue." *Id.* Although he asserts a noncitizen served with such a defective NTA may not have kept "fighting," he concedes he "did defend himself." Pet'r's Br. at 36. In fact, his proceedings before the IJ lasted over two and a half years, with the IJ allowing him the opportunity to seek adjustment of status in lieu of pursuing cancellation of removal. Although Nunez-Robles ultimately insisted on pursuing his cancellation claim, the course of his removal proceedings belies any suggestion of prejudice from the initial hearing date and time listed on his NTA.

Because Nunez-Robles failed to show that he was prejudiced by the erroneous date and time for his hearing listed on his NTA, his due process claim fails.

---

NTA. In any event, he did not argue per-se prejudice under *Accardi* in his motion, and we therefore cannot consider it. *See Robles-Garcia*, 944 F.3d at 1283.

## CONCLUSION

The petition for review is denied.

Entered for the Court


Joel M. Carson III
Circuit Judge