**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**January 21, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

GILDA PERALTA-GONZALEZ; H.S.P.,

    Petitioners,

v.

MERRICK B. GARLAND, United States
Attorney General,

    Respondent.

No. 24-9515
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **BALDOCK**, and **LUCERO**, Circuit Judges.
_____

Petitioners Gilda Peralta-Gonzalez and her minor daughter are natives and

citizens of Guatemala. After determining that petitioners had abandoned their

opportunity to file claims for asylum and related relief, an immigration judge (IJ)

ordered their removal from this country.[1] The Board of Immigration Appeals (BIA)

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] We note the agency caption identified Ms. Peralta-Gonzalez's minor daughter as having "H." as the first initial of her name, *see* R. at 3, but in some of

dismissed their appeal from the IJ's decision. Petitioners now seek review of the BIA's decision. We deny the petition for review.

## BACKGROUND

On February 15, 2019, the Department of Homeland Security (DHS) served Notices to Appear (NTA) on petitioners. The NTAs charged that they were subject to removal from the United States because they (1) were not citizens or nationals of the United States; (2) were natives and citizens of Guatemala; (3) had arrived in the United States at or near El Paso, Texas, on or about February 13, 2019; and (4) had not been admitted or paroled after inspection by an Immigration Officer. The NTAs ordered them to appear before an IJ at the immigration court in Denver, Colorado at a date and time to be set. Petitioners were later served a notice that their initial hearing would be held on April 25, 2019, at the Denver immigration court.

Petitioners appeared at the April 25 hearing without counsel. A Spanish language interpreter was provided for them at this and subsequent IJ hearings. The IJ informed them that they had "the right to be represented by an attorney or qualified representative," but would need to pay for the attorney and to find counsel on their own. R. at 148. She noted that the clerk had provided them with a list of legal service providers, who might be able to help them if they could not afford an attorney. But if they did not retain counsel, they would have to represent themselves. She also informed them of their right to apply for asylum, withholding of removal, or

---

petitioners' filings, the daughter is identified as having "J." as her first initial, *see, e.g.*, R. at 10, 16; Pet'rs Br. at 1, 2.

2

protection under the Convention Against Torture.  Finally, she advised them that if at any time they moved, they must submit a change-of-address form to the court within five days of moving.  The court instructed them to return for the next hearing on May 23, 2019.

At the May 23 hearing, the court advised petitioners concerning the requirements for an asylum claim.  She then asked Ms. Peralta-Gonzalez if she had contacted the attorneys on the free legal service provider list.  Ms. Peralta-Gonzalez responded that she had "called two," that "[t]hey said they were not available," and that she hadn't called anyone else.  R. at 156.  She also said she had not contacted any private attorneys.  The hearing proceeded without petitioners being counseled.  During the hearing, Ms. Peralta-Gonzalez admitted the allegations in the NTA and the IJ found that petitioners were removable as charged.

The IJ then asked if Ms. Peralta-Gonzalez had a fear of returning to her home country and she responded that she did.  The IJ verified she had received an asylum application form and informed her that she must bring the form, completed in English, to her next hearing on July 25, 2019, "no matter what."  *Id.* at 163.  If she did not, the IJ informed her, then "the court [would] consider it abandoned, or given up."  *Id.*  Ms. Peralta-Gonzalez indicated she understood.

The IJ then asked if Ms. Peralta-Gonzalez had any questions, and she responded she had "issues due to money in order to be able to afford a lawyer" but she had "family in Florida, who can help me afford an attorney."  *Id.*  She requested a change of venue.  The IJ denied the request because she had not yet moved to

Florida. She instructed Ms. Peralta-Gonzalez that once she did move, she would need to file a change of address form along with evidence of her new address, such as a letter from a family member "saying you're going to be living with them and they'll be supporting you." *Id.* at 164. The IJ would then consider the DHS's position concerning the request for a change of venue before deciding whether to grant it. In the meantime, proceedings would continue in Colorado.

Prior to the July 25 hearing, on July 8, 2019, Ms. Peralta-Gonzales submitted a change-of-address form showing she had moved to Florida. But she appeared at the July 25 hearing in Denver without a lawyer and without a completed asylum form. Ms. Peralta-Gonzalez explained that she had been unable to complete the form due to financial difficulties, because the lawyers she spoke to would have charged her $300 per hour to fill out the form. *Id.* at 167. She acknowledged that the IJ had told her she would need to complete and file the form at the hearing whether or not she had an attorney. The IJ asked her why she had not attempted to work with a friend, a clinic, or free legal service providers to complete the form. Ms. Peralta-Gonzalez responded that she had "looked, but nobody wanted to take responsibility," and she "couldn't get a lawyer." *Id.* at 168.

The IJ asked the DHS how it wished to move forward. Counsel indicated DHS would like to see the application abandoned due to a lack of effort and for the sake of consistency. Ms. Peralta-Gonzalez indicated she understood the government's position, but asked, if possible, for a "second chance" to complete and submit the form. *Id.* at 169. The IJ denied the request, stating that she had been "clear at the

last hearing that you must file your application today, or that I would find that it was given up or abandoned," and that "I apply that rule the same way to everybody in my courtroom, and I cannot apply it differently for one person or for another." *Id.* at 169. The IJ held that she had abandoned her right to apply for asylum. Ms. Peralta-Gonzalez reiterated that she had been unable to file her application for economic reasons. The IJ stated she understood, then issued her decision, finding that Ms. Peralta-Gonzalez had waived her right to apply for asylum or other relief, which had been abandoned, and ordering petitioners removed to Guatemala.

After the IJ announced her decision, she asked if Ms. Peralta-Gonzalez had any questions. Ms. Peralta-Gonzalez responded she wanted to let the court know she had moved to Florida. After consulting the file, the IJ indicated the court had her current address, in Florida. She also advised Ms. Peralta-Gonzalez concerning the procedure for filing an appeal.

Ms. Peralta-Gonzalez then obtained pro bono counsel, who filed an appeal to the BIA on her behalf.[2] In the appeal, petitioners challenged the IJ's denial of a continuance, her denial of a change of venue, the sufficiency of the NTA to vest the immigration court with jurisdiction, and their placement on an expedited docket designed for families seeking asylum. The BIA concluded the arguments were without merit and dismissed the appeal.

---

[2] The BIA's order indicates that at approximately the same time as petitioners appealed, they filed a motion to reconsider with the IJ. The IJ did not consider that motion but instead forwarded it to the BIA.

## DISCUSSION

**Standard of Review**

We review the BIA's decision "as the final agency determination and limit our review to issues specifically addressed therein." *Diallo v. Gonzales*, 447 F.3d 1274, 1279 (10th Cir. 2006). "[B]ut we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Aguayo v. Garland*, 78 F.4th 1210, 1216 (10th Cir. 2023) (internal quotation marks omitted).

In general, "[w]e review the BIA's legal determinations *de novo* and its findings of fact for substantial evidence." *Id.* But we review the BIA's order affirming the IJ's denial of a continuance, and its affirmance of the IJ's denial of a venue change, for an abuse of discretion. *Jimenez-Guzman v. Holder*, 642 F.3d 1294, 1297 (10th Cir. 2011) (denial of continuance); *Dugboe v. Holder*, 644 F.3d 462, 471 (6th Cir. 2011) (change of venue).[3] "The BIA abuses its discretion when its decision

---

[3] In general, we lack jurisdiction to review the agency's decisions or actions that are made discretionary by statute. *See* 8 U.S.C. § 1252(a)(2)(B)(ii); *but see id.* § 1252(a)(2)(D) (authorizing review of legal and constitutional issues). But decisions made discretionary by regulation do not come within the statutory bar and are therefore reviewable for an abuse of discretion. *See Kucana v. Holder*, 558 U.S. 233, 244-45 (2010). Because both an IJ's discretion to deny a request for a continuance, *see* 8 C.F.R. § 1003.29, and her discretion to grant a venue-transfer motion, *see* 8 C.F.R. § 1003.20(b), arise from regulations, we have jurisdiction under *Kucana* to consider the discretionary denials of these motions. *See, e.g.*, *Luevano v. Holder*, 660 F.3d 1207, 1213 (10th Cir. 2011) (citing *Kucana* and holding this court may review the IJ's discretionary decision denying a motion for continuance); *Dugboe*, 644 F.3d at 469 (concluding court had jurisdiction to determine whether venue-transfer motion was an abuse of discretion, holding *Kucana* had superseded this court's prior precedent in *Ballesteros v. Ashcroft*, 452 F.3d 1153, 1159-60 (10th Cir. 2006)).

provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Ramirez-Coria v. Holder*, 761 F.3d at 1158, 1162 (10th Cir. 2014) (internal quotation marks omitted).

**Denial of Continuance**

The applicable regulation provides that "[i]f an application or document is not filed within the time set by the Immigration Judge, the opportunity to file that application or document shall be deemed waived." 8 C.F.R. § 1003.31(h). The regulation permits an IJ to "extend" time limits, *id.*, and a good-cause standard is applied to grant or denial of extension requests. *See, e.g.*, *Alcarez-Rodriguez v. Garland*, 89 F.4th 754, 763 (9th Cir. 2023) (citing cases); *see also* 8 C.F.R. § 1003.29 (setting forth general good-cause standard for continuances). Petitioners argue the IJ's deadline did not provide them with sufficient time to obtain an attorney and/or to file their asylum application, and an extension or continuance should have been granted. We discern no abuse of discretion.

The BIA determined that in the circumstances of this case, which its decision discussed in detail, the IJ "could conclude that a continuance was not warranted because [petitioners] presented insufficient evidence of a good faith effort to move forward with proceedings." R. at 6. In opposition to this holding, petitioners cite several unpublished cases where the BIA remanded to the IJ to grant additional time to find counsel and to submit applications for relief. But those factually distinct

cases fail to establish that the agency inexplicably departed from its established procedures or otherwise abused its discretion in this case.

Petitioners next argue the IJ failed to develop the record concerning their request for a continuance. This court has "never explicitly recognized that an IJ has an affirmative duty to develop the record [for an unrepresented] applicant." *Arostegui-Maldonado v. Garland*, 75 F.4th 1132, 1147 (10th Cir. 2023) (internal quotation marks omitted). Assuming such a duty exists, petitioners fail to show the record is insufficiently developed. As the BIA noted, the IJ explored such factors as petitioners' efforts to find counsel and attempts to obtain assistance in preparing their applications for relief, and petitioners fail to identify significant additional evidence that would have supported their request for a continuance. *See id.* (rejecting claim the IJ inadequately developed record where petitioner did not identify additional evidence that would support his claim).

Finally, petitioners contend the IJ failed to make an express ruling or individualized good-cause findings about her reasons for denying a continuance and relied instead on the need for a consistent application of deadlines. They also argue that in the absence of specific findings, the BIA improperly supplied its own reasons. As a general matter, an IJ should explain her reasons for denying a continuance. *See Matter of C- B-*, 25 I. & N. Dec. 888, 890 (B.I.A. 2012).[4] Here, however, the

---

[4] Petitioners cite *Matter of L-A-B-R-*, 27 I. & N. Dec. 405, 413 (Att'y Gen. 2018), which requires the agency to consider all relevant factors in assessing whether good cause has been shown and identifies certain factors the agency should consider—in that case, to assess whether good cause was shown for a continuance to

BIA was able to determine, based on Ms. Peralta-Gonzalez's responses to the IJ's questions, that the IJ had not abused her discretion by refusing to continue the deadline. Petitioners have not shown the BIA abused its discretion by affirming the denial, or that the IJ's earlier failure to make specific, individualized findings requires us to grant their petition for review.

**Change of Venue**

The change-of-venue (or change-of-address) issue arose twice in this case. First, the IJ denied a change of venue at the May 23 hearing because petitioners had not yet moved to Florida. Discussing that denial, the BIA stated that the IJ "could properly determine that good cause was not shown to warrant a change of venue." R. at 7.[5] Petitioners fail to show the BIA abused its discretion in upholding the IJ's denial of this first request for a change of venue, which was based on petitioners' continued residence in Colorado.

The second change-of-address issue arises from Ms. Peralta-Gonzalez's submission of a change of address form on July 8 and her statement about the form at the July 25 hearing. The BIA concluded this was not a request for a change of venue.

---

resolve a pending application for collateral relief. For the reasons we have identified, they do not show that the IJ's failure to consider and discuss specific factors as discussed in *L-A-B-R-* requires reversal under the circumstances of this case.

[5] Petitioners attempt to apply this language to the *second* change-of-address issue, which involved petitioners' later submission of a change-of-address form. They argue the BIA's reasoning is wrong because the IJ did *not* make a good cause determination concerning *that* request. Pet'rs Br. at 19. But it is clear in context that in the language we have quoted, the BIA was referring to the first, May 23 request.

*See* R. at 7 (finding petitioners "made no such [second] request"). But petitioners argue the change-of-address form should be treated as such a request, because the IJ had told them at a previous hearing that if they filed a change-of-address form after they moved she would consider whether to change the venue for their hearing.

The applicable regulation states that the IJ "may change venue *only* upon motion by one of the parties," and "may grant a change of venue *only* after the other party has been given notice and an opportunity to respond to the motion to change venue." 8 C.F.R. § 1003.20(b) (emphasis added). The change of address form did not satisfy these requirements. Petitioners fail to show that the IJ was required to treat it as a motion for change of venue, even if her statements at the May 23 hearing may have suggested she would do so. Also, as the BIA noted, Ms. Peralta-Gonzalez did not bring the change of address issue to the IJ's attention at the hearing until after the IJ had rendered her decision. Even then, she did not renew her request for a change of venue, but merely provided the IJ with notice that petitioners had moved. In sum, petitioners fail to show the BIA abused its discretion in declining to treat the submission of a change-of-address form, together with Ms. Peralta-Gonzalez's statement at the end of the hearing about her change of address, as a renewed request for a change of venue.[6]

---

[6] Petitioners also argue that the IJ should have developed the record concerning their request. But they fail to show further development was necessary where the agency found that Ms. Peralta-Gonzalez had not in fact renewed the request.

**Notice to Appear**

Petitioners argue the NTA provided them with insufficient notice of the date and time of their removal proceedings and therefore did not establish jurisdiction to remove them from the United States. Our decision in *Martinez-Perez v. Barr*, 947 F.3d 1273 (10th Cir. 2020), forecloses their argument.[7] *See id.* at 1279 (stating "the requirements of a notice to appear are claim-processing rules" and "[t]he Immigration Court therefore had authority to adjudicate issues pertaining to Petitioner's removal even though Petitioner's notice to appear lacked time-and-date information.").

**Due Process**

Finally, petitioners argue that the agency violated their right to due process under the Fifth Amendment to the United States Constitution by applying an expedited process to them as a Central American family seeking asylum. They claim that as a result of policies adopted during the first Trump administration, "the IJ rushed their case through . . . in three short months before finding their applications for relief abandoned," leaving them with inadequate time to find counsel or to submit

---

[7] Petitioners cite the Supreme Court's later decision in *Niz-Chavez v. Garland*, 593 U.S. 155 (2021), which held that a defective NTA plus a later curative document did not trigger the "stop-time rule" in cancellation of removal proceedings. But nothing in *Niz-Chavez* suggests the agency's *jurisdiction* turns on the technical perfection of the original NTA. Thus, we follow our holding in *Martinez-Perez* that the date and time requirements are not jurisdictional.

their asylum applications and resulting in an inadequately developed record. Pet'rs Br. at 26.

Petitioners were "entitled to a full and fair removal hearing that comports with due process." *See Lucio-Rayos v. Sessions*, 875 F.3d 573, 576 (10th Cir. 2017). Here, they were provided adequate opportunities to seek counsel and to complete their asylum applications but failed to do so. They have not established a constitutional violation.

Petitioners further argue that the Attorney General's anti-immigrant policies caused the IJ to behave in a biased manner by applying a "presumption against asylum eligibility in their case." Pet'rs Br. at 27. The right to a removal hearing that comports with due process includes the right to a "fair and impartial decision-maker." *Lucio-Rayos*, 875 F.3d at 576. But petitioners' generalized assertions based on the Attorney General's statements, adjudication statistics, and case adjudication policies from the Executive Office for Immigration Review do not establish a violation of this right in their case.

## CONCLUSION

We deny the petition for review.

Entered for the Court

Bobby R. Baldock
Circuit Judge