23-6584; 24-2790
Penaranda Arevalo v. Bondi

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2024
Nos. 23-6584, 24-2790

DIEGO PENARANDA AREVALO,
*Petitioner*,

*v.*

PAMELA BONDI,
UNITED STATES ATTORNEY GENERAL,
*Respondent.*∗

On Petition for Review of an Order of
the Board of Immigration Appeals.

ARGUED (23-6584): SEPTEMBER 27, 2024
SUBMITTED (24-2790): JANUARY 13, 2025
DECIDED: MARCH 7, 2025

---

∗ The Clerk of Court is directed to amend the official caption to conform
with the above.

Petitioner Diego Penaranda Arevalo, a citizen of Ecuador unlawfully present in the United States, sought cancellation of a removal order under 8 U.S.C. § 1229b(b)(1).  An immigration judge denied his application, the Board of Immigration Appeals ("BIA") affirmed, and Penaranda petitioned this Court for review.  While that petition was pending, Penaranda filed a motion with the BIA requesting that his removal proceedings be terminated or remanded. He argued, for the first time, that his removal order was invalid because his original notice to appear failed to include the date and time of his initial hearing, as required by 8 U.S.C. § 1229(a).  The BIA denied the motion, reasoning that Penaranda had forfeited any objection based on the time-and-place requirement by failing to raise it in a timely manner.  Penaranda now petitions for review of that decision as well, and we decide both cases in tandem.

Beginning with Penaranda's second petition, we reaffirm our decision in *Banegas Gomez v. Barr*, 922 F.3d 101 (2d Cir. 2019), that the time-and-place requirement is a non-jurisdictional rule, and we hold that the BIA did not abuse its discretion in concluding that Penaranda forfeited his objection.  We therefore DENY that petition.

In his first petition, Penaranda principally challenges the immigration judge's finding that he gave false testimony for the purpose of obtaining an immigration benefit.  That finding led the immigration judge to conclude that Penaranda failed to establish he possessed good moral character, and that he was therefore statutorily ineligible for the requested relief.  This Court lacks jurisdiction to review Penaranda's petition insofar as it contests whether and why

---

[*] Judge Natasha C. Merle, United States District Judge for the Eastern District of New York, sitting by designation.

2

he testified falsely, because these are unreviewable questions of fact under 8 U.S.C. § 1252(a)(2)(B)(i). Penaranda also argues that the immigration judge held him to a higher burden of proof than required when making its factual finding. Although this is a question of law that this Court has jurisdiction to review, it fails on the merits. Accordingly, Penaranda's first petition is DISMISSED in part and DENIED in part.

---

ANTHONY GUIDICE, Fairport, NY, *for Petitioner*.

TARYN L. ARBEITER, Trial Attorney, Office of Immigration Litigation (Brian M. Boynton, Principal Deputy Assistant Attorney General, Aimee J. Carmichael, Acting Assistant Director, Janice K. Redfern, Senior Litigation Counsel, *on the brief*), U.S. Department of Justice, Washington, DC, *for Respondent.*

---

WILLIAM J. NARDINI, *Circuit Judge*:

Petitioner Diego Penaranda Arevalo, a citizen of Ecuador, has lived in the United States unlawfully for more than twenty years. Immigration authorities ordered him removed to his native country, and he applied for cancellation of removal, a discretionary form of relief. An immigration judge (the "IJ") denied his application on the ground that he failed to meet the statutory requirement of having maintained good moral character during the decade preceding his

3

application. That conclusion rested on the IJ's findings (1) that Penaranda testified falsely regarding both the bona fides of his marriage to his first wife, Lucy Raposo, and the origin of his relationship with his second wife, Lucia Medeiros (Lucy's mother); and (2) that he gave that false testimony for the purpose of obtaining an immigration benefit—namely, cancellation of removal. The Board of Immigration Appeals ("BIA") affirmed the IJ's decision. Penaranda petitioned this Court for review of the BIA's judgment (the "2023 petition"). While that petition was pending, Penaranda filed a motion with the BIA to terminate or remand his removal proceedings on the ground, raised for the first time, that his removal order was invalid because his original notice to appear sent in 2012 failed to include the date and time of his initial hearing, as required by 8 U.S.C. § 1229(a). The BIA denied that motion, reasoning that Penaranda had forfeited any objection based on the time-and-place requirement by failing to raise it in a timely manner. Penaranda now petitions for review of that decision as well (the "2024 petition"), and we decide both cases in tandem.[1]

Beginning with Penaranda's 2024 petition, we reaffirm our decision in *Banegas Gomez v. Barr*, 922 F.3d 101 (2d Cir. 2019), that the time-and-place requirement is a non-jurisdictional rule, and we hold that the BIA did not abuse its discretion in concluding that Penaranda forfeited his objection. We therefore DENY that petition.

---

[1] We heard oral argument on the first petition for review on September 27, 2024. Briefing on the second petition was completed on January 13, 2025.

4

Next, we turn to Penaranda's 2023 petition, which raises two challenges concerning the agency's findings that Penaranda gave false testimony and that he did so to obtain cancellation of removal. First, Penaranda argues that these findings were erroneous in light of the record. This Court lacks jurisdiction to review whether and why Penaranda testified falsely, because these are unreviewable questions of fact. *See* 8 U.S.C. § 1252(a)(2)(B)(i). Second, Penaranda argues that the IJ found that he gave false testimony concerning the bona fides of his marriage to Lucy by applying an incorrect legal standard; specifically, he contends that the IJ required Penaranda to rebut that false testimony charge by clear and convincing evidence when the law required only a preponderance of the evidence. Although this argument raises a question of law over which this Court has jurisdiction, it is meritless. Accordingly, Penaranda's 2023 petition is DISMISSED in part and DENIED in part.

## I.    Background

### A.    Penaranda's Attempts to Obtain Permanent Resident Status

Penaranda entered the United States without authorization in December 2001 at age 19. In August 2007, roughly a year after failing to obtain lawful permanent resident status through his father, a permanent resident, Penaranda was arrested by the U.S. Department of Homeland Security ("DHS") and placed in removal proceedings. At that time, Penaranda was living with and dating Lucia Medeiros, who was in the process of divorcing her then-husband, Manuel Raposo. In June 2008, while Penaranda's removal and Lucia's divorce

5

were still pending, Penaranda married Lucia's daughter, Lucy Raposo, a United States citizen.[2] Penaranda's marriage to Lucy allowed him to ward off removal, at least for a time. A few weeks after their marriage, in July 2008, Lucy filed, on Penaranda's behalf, a Form I-130 Petition for Alien Relative—the first step required of a U.S. citizen or permanent resident applying to sponsor a relative for permanent residence. Shortly thereafter, Penaranda filed a Form I-485 Application to Register Permanent Residence or Adjust Status. In December 2008, the immigration court terminated Penaranda's removal proceedings to allow the U.S. Citizenship and Immigration Services ("USCIS") to adjudicate his application. USCIS approved Lucy's I-130 petition in March 2009, thus allowing Penaranda to seek permanent resident status as the immediate relative of a U.S. citizen. Meanwhile, Penaranda's I-485 application remained pending.

In 2010, Penaranda's second attempt to obtain permanent residence began to fail. In December of that year, Lucy called the tipline for U.S. Immigration and Customs Enforcement ("ICE") and reported that she had married Penaranda for the sole purpose of helping him to obtain permanent residence. She later met with two USCIS officers from the agency's Fraud Detection and National Security Directorate at a police station, where she signed a sworn affidavit admitting that she had married Penaranda at her mother's

---

[2] Lucy's legal name, like her mother's, is Lucia. Adopting the convention used by the parties and the immigration judge, this opinion refers to the younger Lucia as Lucy to differentiate between the two women.

request to help him obtain permanent residence. After discussing the case with her "current boyfriend," she "decided [she] needed to come clean." Certified Admin. R. ("CAR") 675.[3] To that end, she stated: "I wish to withdraw any and all support for Diego and I do not wish to sponsor him in any way for immigration purposes." *Id.* at 674. Following Lucy's statement, USCIS began proceedings to revoke the approval of her I-130 petition. Ultimately, in March 2012, USCIS revoked her petition and denied Penaranda's I-485 application for permanent residence.

In April 2012, DHS initiated removal proceedings against Penaranda for the second time, issuing a notice to appear that charged him with removability under 8 U.S.C. § 1182(a)(6)(A)(i) for being in the United States without admission or parole.[4] While his removal proceedings were pending, Penaranda divorced Lucy in September 2012 and then married her mother, Lucia, in March 2013. Then, in September 2013, Lucia, a naturalized U.S. citizen since 2007, filed a

---

[3] Citations to "CAR" refer to the certified administrative record in No. 23-6584.

[4] DHS later added a charge of removability under 8 U.S.C. § 1182(a)(6)(C)(i), which provides that an alien is inadmissible who, "by fraud or willfully misrepresenting a material fact, seeks to procure . . . a visa, other documentation, or admission into the United States . . . ." DHS alleged that in July of 2008, Penaranda filed an I-130 petition based on a marriage to a U.S. citizen (Lucy) that was entered into for the sole purpose of evading the immigration laws. The immigration judge denied this charge because it was Lucy, not Penaranda, who filed the I-130 petition, and thus Penaranda himself did not commit the alleged misrepresentation.

7

Form I-130 petition on Penaranda's behalf, as her daughter had done while married to Penaranda.

Citing his (new) marriage to a U.S. citizen and Lucia's pending I-130 petition, Penaranda moved several times to continue his removal proceedings. USCIS granted nine continuances, but in March 2018, the agency issued a notice of intent to deny the I-130 petition. Notably, in response to that notice, Lucia submitted an unsworn affidavit from Lucy dated April 2018, recanting her 2010 admission that her marriage to Penaranda was a sham. Nonetheless, in July 2018, USCIS denied Lucia's I-130 petition because the agency determined that Penaranda had entered into his prior marriage with Lucy "for the purpose of evading immigration laws." *Id.* at 1248. That determination precluded USCIS from granting Lucia's petition, pursuant to 8 U.S.C. § 1154(c), notwithstanding the agency's finding that Penaranda's marriage to Lucia was "bona fide." *Id.* at 1246. The agency consequently resumed Penaranda's removal proceedings.

### B. Penaranda's Application for Cancellation of Removal

In April 2019, after the resumption of his removal proceedings, Penaranda conceded at a hearing before an immigration judge that he was removable under 8 U.S.C. § 1182(a)(6)(A)(i) because he lacked legal status, but he indicated that he wished to apply for cancellation of removal. He subsequently filed a formal application for cancellation of removal, pursuant to 8 U.S.C. § 1229b(b)(1). To qualify for cancellation of removal, an applicant must establish: (1) continuous physical presence in the United States for ten years;

8

(2) "good moral character" during this period; (3) no criminal convictions under 8 U.S.C. §§ 1182(a)(2), 1227(a)(2), or 1227(a)(3); and (4) "exceptional and extremely unusual hardship" to a qualifying relative, including the applicant's parent or spouse, provided they are U.S. citizens or lawful permanent residents. 8 U.S.C. § 1229b(b)(1)(A)–(D). Penaranda submitted that he met each of these criteria. As to the fourth factor, he alleged that his removal would cause Lucia and his parents, who were permanent residents, to suffer exceptional and extremely unusual hardship.

### 1. Documentary Evidence

During the removal proceedings, DHS made several evidentiary submissions. For one, the agency submitted Lucy's 2010 affidavit in which she admitted having married Penaranda for the purpose of evading immigration laws. That affidavit provided extensive details about the nature of her mother's relationship with Penaranda. Lucy stated that Lucia met Penaranda in 2005 through "a Yahoo chat site for those fifty and over," and that he visited Lucia a month later, at which point Lucy met him for the first time. CAR 674. Penaranda then moved in with Lucia on a part-time basis for about a year before living with her full-time. In February 2008, several months after Penaranda's arrest by immigration officers, Penaranda and Lucia visited Lucy at her apartment and asked her to "'do them a big favor' and marry Diego so that he could stay in the U.S." *Id.* Lucy did not immediately agree and asked for some time to consider the request. The next day, she asked to speak to Penaranda's lawyer about his immigration case. During a meeting with the lawyer,

9

Michael Berger, he informed Lucy that in order to help Penaranda remain in the United States, she would need to stay married to him for three years and live with him throughout that period. Ultimately, she married Penaranda in June 2008 and was promptly asked to sign "a bunch of papers for immigration purposes," which she did "without looking." *Id.* Lucy also stated that when she and Penaranda attended an interview concerning Penaranda's I-485 application in December 2009, she asked to speak to a USCIS officer so that she could withdraw her support for Penaranda, but Berger "would not let [her] speak and said [she] had to remain silent." *Id.*

In addition to Lucy's affidavit, DHS submitted several other records suggesting that Lucy's marriage to Penaranda was a sham. Those submissions included records relating to Penaranda's July 2009 arrest for assaulting Manuel Raposo (Lucia's son and Lucy's brother): (1) the criminal information, which refers to Manuel as Penaranda's "stepson," *id.* at 606; and (2) the police report, which states that Manuel "began arguing with his mother's boyfriend, suspect, Diego D. Penaranda . . . [who] pushed and punched" Manuel, *id.* at 604. DHS also submitted four screenshots of Lucy's 2010 profile page for the social networking site MySpace, which included photographs of Penaranda. In the captions for each of the photographs, Lucy referred to Penaranda as her "step dad"; for example, in one she wrote, "My Mom -N- My Son [] -N- My Step Dad Diego." *Id.* at 567. Her profile also referenced her unhappy marital history, her desire for no "more pain and broken hearts," that she did not need to have money spent on her and did not want to be a friend of any man who had a history

10

of spousal abuse, and that she had been married twice (even though her marriage to Penaranda would have been, in fact, her third marriage). *Id.* at 566.

### 2. Testimony

Over the course of three merits hearings concerning Penaranda's application for cancellation of removal, several witnesses testified before the immigration judge, including Penaranda, Lucia, and Lucy.

Penaranda testified during the initial hearing in September 2019. He stated that he met Lucy online in 2005, but later testified that he met Lucia first. He testified that about a year after meeting Lucy, when he was already living with her family (including Lucia), he and Lucy got engaged. They then married in 2008 "because [they] loved each other," CAR 192, but eventually divorced in September 2012 due to Lucy's drug use, infidelity, and failure to take care of her children. Following the divorce, Penaranda continued to live with Lucy, her children, and Lucia. He testified that he and Lucia later began dating sometime in 2013. According to Penaranda, Lucy's reaction to their relationship was "okay." *Id.* at 216.

Lucia testified during the second hearing in January 2020. She stated that she first met Penaranda when Lucy brought him home in 2005. When asked how they became romantically involved, she explained that after Lucy and Penaranda divorced, she was taking care of Lucy's children because Lucy was "in a lot of trouble," and she "wanted to keep Diego for the children" because he "did everything

11

for [them]." *Id.* at 288–89. Lucia stated that it was around that time—October of 2012—when she began to have feelings for him.

Finally, Lucy testified during the third hearing in November 2020. She denied that she had married Penaranda to help him obtain immigration status, and testified that she did not recall why she would have said otherwise to ICE in 2010 "unless [she] was mad at him or something." *Id.* at 475. But Lucy also offered testimony that contradicted Penaranda's and her mother's accounts. In particular, she stated that she began referring to Penaranda as her stepfather in 2010 after learning that he had become romantically involved with her mother—two years before Penaranda and Lucia said their romantic relationship began. When confronted with her written statement in support of Penaranda's latest application for cancellation of removal, in which she asserted that Penaranda fell in love with Lucia only *after* he divorced Lucy in 2012, Lucy stated, "I misspoke on that," and reiterated that Penaranda "fell in love with [her] mom prior to [their divorce]." *Id.* at 518–19. She also conceded that the biography section of her 2010 MySpace profile: did not mention Penaranda, stated that she had been married twice even though Penaranda was her third husband at that time, and gave the impression that she was seeking a relationship.

Following Lucy's testimony, the immigration judge called Penaranda back to the stand to address Lucy's statement that she regarded him as her stepfather as early as 2010. Penaranda confirmed that Lucy had testified accurately as to her own feelings toward him

12

as of 2010, but he insisted that he had feelings for Lucia only as a son-in-law at that time.

## C. The IJ's Decision

On March 25, 2021, the IJ issued a written decision denying Penaranda's application for cancellation of removal. The IJ explained that he would make a determination of Penaranda's credibility based on "the totality of the evidence, and all relevant factors," including the inherent plausibility of his account, the consistency between oral and written statements, the internal inconsistency of such statements, and the consistency of such statements with the evidence in the record. CAR 76 (citing 8 U.S.C. § 1229a(4)(C)).[5] He then set forth the four criteria that Penaranda was required to meet to obtain cancellation of removal pursuant to 8 U.S.C. § 1229b(b)(1), and stated that Penaranda "bears the burden to prove that he is statutorily eligible and merits a favorable exercise of discretion," citing 8 U.S.C. § 1229a(c)(4)(A) and 8 C.F.R. § 1240.8(d). *Id.*

After finding that Penaranda had met his burden to prove his continuous physical presence in the United States since entering the country illegally, the IJ went on to consider whether Penaranda had been a person of good moral character for the ten years preceding his application. He noted that, pursuant to 8 U.S.C. § 1101(f)(6), "[a]n applicant will be deemed to lack good moral character if it is found

---

[5] Although the IJ cited directly to the Immigration and Nationality Act, this opinion will cite the corresponding provisions of the U.S. Code for consistency and ease of reference.

13

that he has given false testimony for the purpose of obtaining an immigration benefit." [6] *Id.* at 78. Such false testimony, the IJ explained, includes testimony given in the subject removal proceedings. DHS alleged that Penaranda provided false testimony on two related issues: first, when he and Lucia began their romantic relationship, and second, the bona fides of his marriage to Lucy.

The IJ considered each charge in turn. With respect to the beginning of Penaranda's romantic relationship with Lucia, the IJ noted that both Penaranda and Lucia testified that their relationship did not begin until after Penaranda divorced Lucy in September 2012. But the IJ also noted that Penaranda changed his testimony twice as to whether his relationship with Lucia began before or after his divorce from Lucy. Additionally, the IJ found that two pieces of documentary evidence undermined Penaranda's timeline. The first is the criminal information for Penaranda's July 2009 arrest for assaulting Lucia's son Manuel, which refers to Penaranda as Manuel's stepfather. The second is Lucy's MySpace profile from May 2010, which includes three photos of Penaranda with captions created by Lucy that refer to him as her stepfather, and which also describes Lucy in a way that suggests she was seeking a relationship—for example, by noting her unhappy marital history and desire to avoid any more broken hearts. Moreover, while Lucy at one point stated that Penaranda and her mother fell in love only after she and Penaranda divorced in 2012, she later disavowed that statement and

---

[6] The IJ cited Section 1101(b)(6), rather than the appropriate authority under Section 1101(f)(6), but this appears to be a mere scrivener's error.

14

testified that Penaranda's relationship with her mother was obvious to her as early as 2010. Considering this evidence, the IJ found that Penaranda failed to meet his burden to prove that he did not give false testimony with respect to when his relationship with Lucia began.

The IJ also found that Penaranda failed to rebut the charge that he gave false testimony concerning the bona fides of his marriage to Lucy. The IJ explained that the evidence relating to the first charge "is directly tied to the second," and that the inconsistency between Penaranda's and Lucy's accounts of the beginning of Penaranda's relationship with Lucia was "'particularly significant' in determining whether their marriage was bona fide." *Id.* at 81 (quoting *Matter of Phillis*, 15 I & N Dec. 385, 387 (BIA 1975)). Further, the IJ placed substantial weight on Lucy's December 2010 affidavit, in which she stated that Penaranda and Lucia asked her to marry Penaranda so that he could remain in the United States. The IJ stated that although Lucy later recanted her 2010 affidavit in an unsworn statement to USCIS, that "recantation is afflicted by a stark inconsistency." *Id.* at 82. Specifically, Lucy said that she had leveled the sham marriage claim out of anger at Penaranda for taking her to rehab, but Lucy, Lucia, and Penaranda all testified that she went to rehab in December 2011, one year after she had made the claim. Moreover, the IJ noted that Penaranda had not provided any documentary evidence of the bona fides of his marriage to Lucy, such as income tax returns, bank accounts, or photos of the wedding. For these reasons, among others, the IJ found that Penaranda failed to meet his burden to prove that he

15

did not give false testimony with respect to the bona fides of his marriage to Lucy.

Based on these false testimony findings, the IJ determined that Penaranda lacked the requisite good moral character under 8 U.S.C. § 1101(f)(6). Accordingly, the IJ concluded that Penaranda was disqualified from obtaining cancellation of removal and denied his application.

### D. The BIA's Order Affirming the Denial of Penaranda's Application

On appeal to the BIA, Penaranda argued that the IJ misconstrued what constitutes false testimony and that the decision to deny his application lacked a proper basis. He also argued that the IJ applied the wrong legal standard in determining whether he gave false testimony regarding the bona fides of his marriage to Lucy. Rejecting these arguments in an order dated May 24, 2023, the BIA "agree[d] with the Immigration Judge's determination that the respondent is not eligible for cancellation of removal because he failed to establish good moral character." CAR 3. The BIA concluded that "[t]he Immigration Judge properly determined that the respondent's claim to good moral character is defeated by him giving false testimony for the purpose of obtaining an immigration benefit." *Id.* Accordingly, the BIA dismissed Penaranda's appeal.

### E. Penaranda's Motion to Terminate or Remand His Removal Proceedings

On July 18, 2023, Penaranda filed with the BIA a motion to terminate or remand his removal proceedings. He argued, for the first time, that his removal order was invalid because his notice to appear failed to include the date and time of the initial hearing, in violation of 8 U.S.C. § 1229(a), which sets forth the notice requirements for removal proceedings.[7] On October 16, 2024, the BIA denied Penaranda's motion. The BIA explained that it generally considers an objection to a noncompliant notice to appear to be timely if the objection is raised prior to the close of proceedings before the IJ, which in this case was March 25, 2021, when the IJ denied Penaranda's application for cancellation of removal. Because Penaranda failed to challenge the validity of the notice until more than two years after the IJ proceedings ended, the BIA concluded that Penaranda had forfeited the objection.

## II. Discussion

### A. Petition for Review of the BIA's Order Denying Penaranda's Motion to Terminate or Remand His Removal Proceedings

We first consider Penaranda's 2024 petition. 8 U.S.C. § 1229(a)(1) provides that the government must provide a written

---

[7] The notice listed both the date and time of the hearing as "[t]o be set." CAR 2063.

"notice to appear" to any alien in removal proceedings specifying, among other things, the "nature of the proceedings," the "acts or conduct alleged to be in violation of law," and the "time and place at which the proceedings will be held."  In *Matter of Fernandes*, the BIA concluded that "the time and place requirement in [Section 1229(a)(1)] is a [mandatory] claim-processing rule, not a jurisdictional requirement."  28 I. & N. Dec. 605, 608 (BIA 2022).  Claim-processing rules "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times."  *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011).  The Supreme Court has consistently recognized that a party can forfeit arguments arising under a claim-processing rule.  *See, e.g.*, *Santos-Zacaria v. Garland*, 598 U.S. 411, 417, 423 (2023) (holding that 8 U.S.C. § 1252(d)(1), "a quintessential claim-processing rule" governing judicial review of final orders of removal, is "subject to waiver and forfeiture"); *Fort Bend County v. Davis*, 587 U.S. 541, 549, (2019) ("[A]n objection based on a mandatory claim-processing rule may be forfeited if the party asserting the rule waits too long to raise the point." (internal quotation marks omitted)).  In *Matter of Nchifor*, the BIA applied these principles to conclude that the respondent—who, like Penaranda, "raised an objection to the missing time or place information in his notice to appear for the first time in a motion to reopen" and terminate his removal proceedings—"waited too long to raise this issue and forfeited his objection to this missing information."  28 I. & N. Dec. 585, 589 (BIA 2022) (internal quotation marks omitted).  Relying on *Nchifor*, the BIA held that Penaranda, too,

18

had forfeited his objection to the notice to appear, and therefore denied his motion.

This Court reviews the denial of a motion to reopen for abuse of discretion, *see Twum v. INS*, 411 F.3d 54, 58 (2d Cir. 2005), and reviews *de novo* questions of law decided by the IJ or the BIA, *Boluk v. Holder*, 642 F.3d 297, 301 (2d Cir. 2011).

In petitioning for review of the BIA's order, Penaranda principally argues that following the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), this Court need not defer to the BIA's holding in *Fernandes* that the time-and-place requirement in Section 1229(a)(1) is a non-jurisdictional, claim-processing rule and thus is subject to waiver and forfeiture. In *Loper Bright*, the Supreme Court held that "courts need not and under the [Administrative Procedure Act] may not defer to an agency interpretation of the law simply because a statute is ambiguous," thereby overruling *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). 603 U.S. at 412–13.

Penaranda's reliance on *Loper Bright* is unavailing. While we may not defer to the BIA's classification of Section 1229(a)(1) as a non-jurisdictional, claim-processing rule, we have already held that omission of the time and place from a notice to appear does not deprive an immigration judge of jurisdiction over removal proceedings. As we explained in *Banegas Gomez v. Barr*, 922 F.3d 101, 110–12 (2d Cir. 2019), no "statutory glue bonds the Immigration Court's jurisdiction to § 1229(a)'s requirements." Although we

19

proceeded to explain why our statutory analysis was consistent with both agency regulations and BIA precedent, in no way did our interpretation of Section 1229(a) depend on these administrative materials or rely on *Chevron* deference. And even if we had relied on the agency's interpretation of Section 1229(a), the Supreme Court explained in *Loper Bright* that "[m]ere reliance on *Chevron* cannot constitute a 'special justification' for overruling . . . a statutory precedent." 603 U.S. at 412. For the avoidance of all doubt: We confirm that, based on our own independent analysis, we agree with the BIA that Section 1229(a)(1) creates a mandatory but non-jurisdictional, claim-processing rule that is subject to waiver and forfeiture.[8] Section 1229(a)(1) is a typical example of a rule that "speak[s] to a party's procedural obligations." *Fort Bend County*, 587 U.S. at 551 (alteration and internal quotation marks omitted); *cf. Henderson v. United States*, 517 U.S. 654, 656 (1996) (holding that

---

[8] In doing so, we join several of our sister circuits. *See, e.g., Chavez-Chilel v. Att'y Gen.*, 20 F.4th 138, 142–44 (3d Cir. 2021) (explaining that "Section 1229(a) is a claims-processing rule" that "differ[s] from jurisdictional rules"); *Martinez-Perez v. Barr*, 947 F.3d 1273, 1277–79 (10th Cir. 2020) (holding that Section 1229(a)(1)'s "requirements relating to notices to appear are non-jurisdictional, claim-processing rules"); *Santos-Santos v. Barr*, 917 F.3d 486, 490 (6th Cir. 2019) ("[T]he INA . . . does not address jurisdictional prerequisites."); *Ortiz-Santiago v. Barr*, 924 F.3d 956, 963 (7th Cir. 2019) (Section 1229(a)(1) "is not 'jurisdictional' in nature. It is instead the agency's version of a claim-processing rule, violations of which can be forfeited if an objection is not raised in a timely manner."); *Karingithi v. Whitaker*, 913 F.3d 1158, 1160 (9th Cir. 2019) ("Section 1229 says nothing about the Immigration Court's jurisdiction."); *Perez-Sanchez v. Att'y Gen.*, 935 F.3d 1148, 1153–55 (11th Cir. 2019) ("We do not read section 1229's time-and-place requirement to create a jurisdictional rule"; it is "only a claim-processing rule.").

"the manner and timing of serving process are generally nonjurisdictional matters").[9]

Penaranda also argues that he could not have timely objected to his allegedly defective notice to appear because *Fernandes* was decided only after the close of the IJ proceedings. He suggests that before the BIA decided *Fernandes*, he could not have known that Section 1229(a)(1) was a mandatory rule on which he could base an objection to his allegedly defective notice to appear, let alone that such an objection could be waived or forfeited. We are not persuaded.

Penaranda did not need *Fernandes* to frame an argument that his notice to appear was deficient, in violation of Section 1229(a)(1). That provision has been on the books since 1997, and all Penaranda had to do to raise this argument was to compare his notice to appear to the statute itself. Somebody has to be the first one to raise a legal argument, and it could just as easily have been Penaranda who did

---

[9] To the extent that Penaranda challenges the BIA's authority to deem such an objection untimely when it is made for the first time after the close of proceedings before the IJ, this argument lacks merit. Courts have recognized that agencies "may prescribe and enforce reasonable procedural requirements" for claim-processing rules. *Union Pac. R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 85 n.9 (2009); *see also Ortiz-Santiago*, 924 F.3d at 963 (acknowledging "an agency may adopt rules and processes to maintain order"). The BIA acted well within its discretion by imposing the agency equivalent of the "well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." *Green v. Dep't of Educ. of City of N.Y.*, 16 F.4th 1070, 1078 (2d Cir. 2021) (internal quotation marks omitted). Because the BIA sits in appellate review of IJ decisions, it is perfectly reasonable to require litigants to raise any arguments for the first time before the IJ.

21

so, instead of Fernandes. Put another way: A litigant can forfeit an available argument even if it has not been previously raised or recognized in another case.

Thus, it follows that a litigant can forfeit such an argument even if it has not previously been held forfeitable in another case. Yes, the BIA had no occasion until *Fernandes* to hold that a petitioner can forfeit a Section 1229(a)(1) objection by failing to raise it before an IJ. But Penaranda does not suggest that the BIA ever held to the contrary—that the rule was jurisdictional—and then flip-flopped in his case, such that he was sandbagged into thinking that he could simply wait until after his IJ proceedings were done and raise it in the first instance before the BIA. Indeed, the opposite is true: Two years before Penaranda's IJ proceedings ended, the BIA held that a notice to appear that fails to specify the time or place of an initial hearing does not deprive the IJ of jurisdiction, "so long as a notice of hearing specifying this information is later sent to the alien." *Matter of Bermudez-Cota*, 27 I. & N. Dec. 441, 447 (BIA 2018); *see also Banegas Gomez*, 922 F.3d at 110–11 ("Section 1229 in fact says nothing about the Immigration Court's jurisdiction." (internal quotation marks omitted)). The obvious implication of Section 1229(a)(1) not being a jurisdictional rule is that it is subject to waiver or forfeiture. *See, e.g., Eberhart v. United States*, 546 U.S. 12, 18–19 (2005) (describing several "nonjurisdictional" procedural rules as "claim-processing rules" that may be forfeited); *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004) (explaining that "a critical difference between a rule governing subject-matter

22

jurisdiction and an inflexible claim-processing rule" is that the former, unlike the latter, cannot be forfeited).

In short, the BIA did not abuse its discretion by deeming forfeited Penaranda's untimely objection to the omission of a date and time from his initial notice to appear, and therefore denying his motion to terminate. Accordingly, Penaranda's 2024 petition is denied.

## B. Petition for Review of the BIA's Order Affirming the Denial of Penaranda's Application for Cancellation of Removal

The threshold question with respect to Penaranda's 2023 petition is whether this Court has jurisdiction to review the petition under *Wilkinson v. Garland*, 601 U.S. 209 (2024). The answer is yes, but only in part.

In general, pursuant to 8 U.S.C. § 1252(a)(2)(B)(i), federal courts lack jurisdiction to review judgments pertaining to certain forms of immigration relief, including cancellation of removal. Notwithstanding that provision, Section 1252(a)(2)(D) authorizes courts of appeals to review such decisions to the extent that they raise constitutional claims or questions of law. This authority extends to mixed questions of law and fact—that is, questions that involve "the application of a legal standard to undisputed or established facts"— even those that "require[] close engagement with the facts." *Wilkinson*, 601 U.S. at 217, 222. Mixed questions are "always reviewable as questions of law," *id.* at 218–19, although they are

23

subject to more deferential review than pure questions of law, *id.* at 222. But as the Supreme Court recently reaffirmed, "questions of fact underlying denials of discretionary relief are unreviewable under both § 1252(a)(2)(B)(i) and § 1252(a)(2)(D)." *Id.* at 219.

In challenging the BIA's judgment, Penaranda raises two principal arguments relating to the findings that he gave false testimony and that he did so for the purpose of obtaining an immigration benefit (specifically, cancellation of removal), which led the agency to conclude that he lacked good moral character within the meaning of 8 U.S.C. § 1101(f)(6). First, while conceding that his testimony contained certain errors and inconsistencies, Penaranda contends that he did not make any misrepresentations with the purpose of obtaining an immigration benefit, and that the agency therefore erred in finding that he did. Second, he contends that the IJ held him to an overly demanding standard of proof—clear and convincing evidence, rather than a preponderance of the evidence— to establish the truthfulness of his testimony regarding the bona fides of his marriage to Lucy.[10] In his view, the BIA erred in not correcting the IJ's application of the wrong standard of proof.

---

[10] Penaranda also argues in passing that the proceedings before the immigration judge were tainted by bias because the immigration judge and Penaranda's own lawyer engaged in "side comments" in which they "disparage[d] Penaranda for marrying his former mother-in-law." Pet.'s Br. 7–8 (Citations to "Pet.'s Br." refer to Penaranda's brief in No. 23-6584.). Because Penaranda did not exhaust this argument by raising it before the BIA, this Court may not review it in the first instance now. *See* 8 U.S.C. § 1252(d)(1); *Y.C. v. Holder*, 741 F.3d 324, 336 (2d Cir. 2013) (The "issue exhaustion requirement is mandatory.").

The gravamen of Penaranda's first argument is that the agency made erroneous factual findings. Because this Court lacks jurisdiction to review factual questions, the petition is dismissed as to that issue. And although Penaranda's second argument raises a question of law, it misconstrues the IJ's decision and is therefore meritless. Accordingly, on this latter issue, the petition for review is denied.

1. **Penaranda's Challenge to the Agency's Factual Findings That He Gave False Testimony And That He Did So for the Purpose of Obtaining an Immigration Benefit**

In his opening brief, Penaranda devotes considerable space to arguing why, in his view, the IJ and BIA erred in finding (1) that he gave false testimony before the IJ about both when his relationship with Lucia began and the bona fides of his marriage to Lucy, and (2) that he did so for the purpose of obtaining the immigration benefit of cancellation of removal. For instance, Penaranda argues that he "wasn't misrepresenting [the] facts to gain an immigration benefit. He was nervous, afraid and embarrassed." Pet.'s Br. 17. In the pages that follow, he marches through select parts of his testimony before the IJ and attempts to explain how his statements show that he was "tense and nervous" but evince no "deliberate attempt to lie." *Id.* at 18, 20. This line of argument raises questions of fact underlying the agency's judgment to deny Penaranda's application for cancellation of removal, and this Court therefore lacks jurisdiction to review this argument.

The Supreme Court has held that "[f]ederal courts lack jurisdiction to review facts found as part of discretionary-relief proceedings under . . . [the] provisions enumerated in [8 U.S.C.] § 1252(a)(2)(B)(i)." *Patel v. Garland*, 596 U.S. 328, 347 (2022). Among those enumerated provisions is Section 1229b, which governs cancellation of removal. It follows that findings of fact underlying judgments regarding applications for cancellation of removal are unreviewable. *See Wilkinson*, 601 U.S. at 222 (recognizing that "a court is . . . without jurisdiction to review a factual question raised in an application for discretionary relief"). In *Kungys v. United States*, the Court explained that under Section 1101(f)(6), the question of "whether in making the misrepresentations [a petitioner] possessed the subjective intent of thereby obtaining immigration or naturalization benefits" is a "question of fact . . . [that] must be resolved by the trier of fact." 485 U.S. 759, 782 (1988).

Penaranda's petition raises precisely such questions here. Specifically, he argues that the BIA "ignored" the principle, set forth in *Kungys*, that an applicant who gives false testimony lacks good moral character under Section 1101(f)(6) only if the statement was made with the subjective intent of obtaining immigration or naturalization benefits. Pet.'s Br. 31–34. In Penaranda's view, the IJ erroneously declined to consider the possibility that Penaranda's testimonial deficiencies were the result of embarrassment, fear, or a desire for privacy, rather than a deliberate attempt to lie (in other words, that his subjective motivation for any false testimony was something other than a desire to obtain cancellation of removal); and

26

the "BIA swept this [error] aside." *Id.* at 32–33. These are debates about Penaranda's mental state at the time of his testimony. Whether and why a petitioner testified falsely are questions of fact. When a petitioner challenges the agency's denial of his application for cancellation of removal, this Court has no jurisdiction to review such matters. Accordingly, Penaranda's petition is dismissed insofar as it challenges the agency's findings that he gave false testimony and that he did so for the purpose of obtaining an immigration benefit.

A reviewing court's assessment under Section 1252(a)(2)(D) must have some teeth. The court "need[s] to study the arguments asserted" and "determine, regardless of the rhetoric employed in the petition, whether [they] merely quarrel[] over the correctness of the factual findings or justification for the discretionary choices, in which case the court would lack jurisdiction." *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 329 (2d Cir. 2006). Put differently, in order to invoke a reviewing court's jurisdiction, a petitioner must raise a *colorable* question of law. *See Barco-Sandoval v. Gonzales*, 516 F.3d 35, 40 (2d Cir. 2007) ("[W]e lack jurisdiction to review any legal argument that is so insubstantial and frivolous as to be inadequate to invoke federal-question jurisdiction." (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 n.10 (2006))); *Avendano–Espejo v. Dep't of Homeland Sec.*, 448 F.3d 503, 505 (2d Cir. 2006) (dismissing petition because petitioner "failed to raise any colorable 'constitutional claims or questions of law' sufficient to invoke our jurisdiction under . . . 8 U.S.C. § 1252(a)(2)(D)"). Simply labeling an argument a "question of law" does not make it so.

27

Penaranda's argument, while framed as a challenge to the agency's application of *Kungys*, does not raise a colorable question of law; all it does, in substance, is challenge the agency's finding about *why* Penaranda lied during his testimony. That is squarely a factual determination. An agency cannot be said to have erred as a matter of law by reaching one factual conclusion rather than another. Thus, the jurisdictional bar under Section 1252(a)(2)(B)(i) applies to this argument with equal force.

The same goes for Penaranda's arguments regarding the IJ's assessment of the evidence (and the BIA's review). Penaranda contends, among other things, that the IJ gave undue probative weight to the police report concerning his July 2009 arrest for assaulting Manuel while discounting certain other evidence that is purportedly favorable for him. He also contends that the BIA's decision to affirm the IJ's allegedly faulty factual findings demonstrates a lack of "reasoned consideration." Pet.'s Br. 48. A challenge to the agency's weighing of the evidence, or the logic it employed in drawing inferences from it, no less than a challenge to the factual findings that result from such analysis, raises questions of fact; we therefore lack jurisdiction to review Penaranda's arguments on these points as well.[11] *See Boluk*, 642 F.3d at 304 (explaining that

---

[11] Penaranda also asserts that the IJ "selectively" considered the evidence "he wished to believe, and chose not to credit evidence to the contrary." Pet.'s Br. 31. This Court held in *Mendez v. Holder*, 566 F.3d 316, 323 (2d Cir. 2009)—and reaffirmed in subsequent cases—that the BIA has committed "an error of law" when it has "totally overlooked" or "seriously mischaracterized" certain evidence. But the record is abundantly clear that neither the IJ nor the BIA committed any such error here.

reviewing court does "not 'reevaluate the relative strength of the evidence' presented to the immigration judge" (citation omitted)); *cf. Contreras-Salinas v. Holder*, 585 F.3d 710, 714 (2d Cir. 2009) (observing that "§ 1252(a)(2)(B)(ii) precludes court review of petitions" that are "directed at the Attorney General's credibility determinations and the weight he gave to the evidence that he credited" (internal citations omitted) (quoting *Cho v. Gonzales*, 404 F.3d 96, 101 (1st Cir. 2005))).

### 2. Penaranda's Challenge to the Legal Standards Applied by the IJ

Penaranda next argues that the IJ applied the wrong legal standard when considering whether Penaranda had falsely testified about the bona fides of his marriage to Lucy. The IJ stated that because Penaranda was in removal proceedings when he married Lucy, their marriage carried a presumption of fraudulence that could be rebutted only with "clear and convincing evidence" that they did not marry for the purpose of obtaining his admission as an immigrant. Pet.'s Br. 34–35 (quoting CAR 84). Penaranda suggests that while that framework was applicable for Lucy's I-130 petition on his behalf (which was initially granted but later revoked), it had no bearing on his current application for cancellation of removal. *See id.* at 34. He contends that, for present purposes, his burden was limited to showing by a mere preponderance of the evidence that he had not "falsely testif[ied]" about the bona fides of his marriage to Lucy. *Id.* Thus, he argues, the IJ "impermissibly heightened the standard of proof" by requiring clear and convincing evidence, which "tainted

[the] weighing of the evidence," and the BIA failed to correct this error. *Id.* at 34–35.

This argument raises a reviewable question of law. *See Xiao Ji Chen*, 471 F.3d at 329 (argument that a discretionary decision is "an abuse of discretion because it was made . . . based on a legally erroneous standard" may raise a question of law under 8 U.S.C. § 1252(a)(2)(D)). But even assuming *arguendo* that Penaranda is correct that the proper standard of proof was only a preponderance of the evidence, there is no basis in the record for concluding that the IJ held him to a higher standard. His argument to the contrary is based on a misreading of the IJ's opinion.

At no point did the IJ state that Penaranda was required to satisfy his burden of proof by clear and convincing evidence. The IJ was considering two related but distinct questions: (1) whether Penaranda had met his burden to establish that he had the good moral character required by 8 U.S.C. § 1229b(b)(1)(B), and, subsidiary to that general inquiry, (2) whether Penaranda had met his burden to show that he had not testified falsely for the purpose of obtaining an immigration benefit when he denied that his marriage to Lucy was a sham. The IJ correctly stated that Penaranda bore the burden of proof to establish his eligibility for cancellation of removal, including as to the good moral character factor. When discussing the legal standards governing Penaranda's application as a whole, the IJ listed the four criteria for cancellation of removal under Section 1229b(b)(1) and correctly stated that "[t]he applicant bears the burden to prove that he is statutorily eligible and merits a favorable exercise of discretion."

30

CAR 76 (citing 8 U.S.C. § 1229a(c)(4)(A) (placing the burden of proof on the applicant for relief from removal) and 8 C.F.R. § 1240.8(d) (same)).[12] And with respect to the good moral character factor in particular, the IJ likewise stated that "Respondent bears the burden of demonstrating that he has been a person of good moral character for a continuous period of at least ten years preceding the date of his application." *Id.* at 77 (citing 8 U.S.C. §§ 1229a(c)(4) and 1229b(b)(1)). All of that was correct, and Penaranda does not contend otherwise.

Penaranda points to places where the IJ referred to the clear-and-convincing standard, but the IJ was not talking about Penaranda's own burden of proof. Instead, the IJ noted that, when Lucy submitted her I-130 petition on Penaranda's behalf, she had to establish the bona fides of their marriage by clear and convincing evidence to overcome the presumption that a marriage is fraudulent if it occurs while removal proceedings are pending. *Id.* at 84 (citing 8 U.S.C. §§ 1154(g), 1255(e)(2)–(3)). Given that Lucy must have provided evidence to satisfy that higher burden when USCIS granted her I-130 (before it was later revoked in light of her recantation), the

---

[12] 8 U.S.C. § 1229a(c)(4)(A) provides that:

> An alien applying for relief or protection from removal has the burden of proof to establish that [he] . . . satisfies the applicable eligibility requirements; and . . . with respect to any form of relief that is granted in the exercise of discretion, that the alien merits a favorable exercise of discretion.

Similarly, 8 C.F.R. § 1240.8(d) provides that "[t]he respondent shall have the burden of establishing that he or she is eligible for any requested benefit or privilege and that it should be granted in the exercise of discretion."

31

IJ inferred that Penaranda should have had ample evidence at his disposal to establish the bona fides of that same marriage now. Contrary to that reasonable expectation, Penaranda did "not provide[] any documentary evidence, with one minor exception, to show that his marriage to Lucy was bona fide."[13] *Id.* In other words, the IJ was highlighting how surprising it was that Penaranda could not come up with any meaningful evidence to back up his marriage to Lucy—in stark contrast with the abundance of documentary evidence he produced to support his later marriage to her mother. In any event, the IJ did not mention the clear-and-convincing standard with respect to the other false testimony finding—namely, when Penaranda and Lucia began their relationship; that finding alone dictated the conclusion, pursuant to 8 U.S.C. § 1101(f)(6), that Penaranda lacked good moral character and thus rendered him ineligible for cancellation of removal. Accordingly, the petition is denied as to this argument.

## III. Conclusion

In summary, we hold:

1. The requirement that a notice to appear specify the time and place of an initial removal hearing, set forth in 8 U.S.C. § 1229(a)(1), is

---

[13] The one piece of documentary evidence was Penaranda's 2012 tax return, which listed Lucy as a dependent, but not as his spouse.

a non-jurisdictional, claim-processing rule subject to waiver and forfeiture.

2. The BIA did not abuse its discretion in denying Penaranda's motion to terminate, based on its conclusion that Penaranda forfeited his objection under 8 U.S.C. § 1229(a)(1) by failing to raise it before the conclusion of the IJ proceedings.

3. We lack jurisdiction to review the agency's denial of cancellation of removal under 8 U.S.C. § 1252(a)(2)(B), to the extent that Penaranda contests the IJ's determination that he gave false testimony for the purpose of obtaining an immigration benefit, because that is an unreviewable question of fact.

4. We have jurisdiction to review the agency's denial of cancellation of removal under 8 U.S.C. § 1252(a)(2)(D), to the extent that Penaranda contests the standard of proof applied by the IJ, because that raises a question of law. But even assuming *arguendo* that Penaranda had to establish his eligibility for relief only by a preponderance of the evidence, the record does not support his claim that the IJ held him to the higher standard of clear and convincing evidence.

For the foregoing reasons, Penaranda's 2024 petition is DENIED, and his 2023 petition is DISMISSED in part and DENIED in part.